[Civ. No. 1209.   Third Appellate District.—March 15, 1915.]

# O. PETERSON, Respondent, v. WILL M. BEGGS et al. Appellants.

MINING PARTNERSHIPS—ACTUAL JOINT WORKING ESSENTIAL TO.—The actual working of a mine by the owners for their mutual benefit, is essential to the existence of a partnership relation, the parties to contribute to the extent of the work and to share in the profits according to their respective interests.

ID.—CONTRACTS—WHEN MINING PARTNERSHIP NOT SHOWN.—A mining partnership is not constituted by an agreement between an attorney and his client that the former should sell certain mining properties of which he held the title in trust for both, and from the purchase price, from time to time, deduct a sum sufficient to repay him all sums put out for the benefit of the properties and to compensate him for his legal services, and after such repayment, and the payment of the expense of the sales, the sums remaining to be divided equally between the parties, and any remaining property to be held in joint ownership.

ID.—WHEN PARTY NOT LIABLE FOR LABOR.—In such a case, where the agreement did not contemplate a joint working of the mines by the parties to the contract, but by its terms the attorney was in sole charge of the property, and whatever work was provided to be done by it was to be done by the attorney and no money was to be advanced by the other party, the attorney was not liable for services performed by a party on the mine who was employed by the other party to the contract.

ID.—ATTACHMENT—INSUFFICIENT AFFIDAVIT FOR.—An affidavit for an attachment which states "that the said attachment is not sought . . . to hinder, delay or defraud any creditor or creditors of the defendant," is insufficient, where there are three defendants, as it only refers to one defendant, which does not meet the requirements of section 538 of the Code of Civil Procedure. Such an affidavit might have been amended upon motion at or before the hearing of an application to discharge the attachment, but where no application was made the attachment should have been discharged.

APPEAL from a judgment of the Superior Court of Sierra County and from an order refusing to dissolve an attachment. Stanley A. Smith, Judge.

The facts are stated in the opinion of the court.

R. C. McComish, and E. L. Rhodes, for Appellants.

J. M. Walling, for Respondent.

SHIELDS, J., *pro tem.*—Plaintiff prosecuted this action to recover for services rendered as a watchman or keeper of a mining property known as the Kate Hardy Mine. He was employed by the defendant, John W. Morrell, but alleging that all of the defendants were mining partners, claims that they were jointly liable as such for the value of his services. Plaintiff recovered judgment. An attachment was issued in the case which defendants later moved to vacate. This is an appeal from the judgment and an order refusing to dissolve the attachment. The sole ground of attack upon the judgment is that there is no evidence to support it. This appears to be a fact.

On July 8, 1909, one Tyler Dudley appears to have been the owner of the Kate Hardy Mine. On that day he entered into a contract by which he agreed to sell the mine to defendant Will M. Beggs. Beggs having possession of the mine under a previous contract, retained it under this agreement and on the thirteenth day of July, 1909, entered into an agreement with the defendants Morrell which seems to be decisive of this case. This agreement recites that a number of mines and mining properties belonging to the Morrells had been conveyed to Beggs, and that they had given him a power of attorney; that Beggs had in his own name a contract to buy the Kate Hardy and other mines, that he had expended in and about said mines a considerable sum of money in behalf of the, Morrells, and that he had also performed valuable legal services for them. The contract then provided that although the title to all of the mining properties described stood in the name of Beggs, yet as between the parties he was not the owner of them, but simply held the title in trust for the parties, substantially as follows: That he was to sell the mining property, or some portion of it, and from the purchase

price from time to time, deduct a sum sufficient to repay to him all sums paid out by him, either to the Morrells or for the benefit of the mining properties and to compensate him for his services as an attorney in behalf of the defendants Morrell. After the repayment of these sums and the payment of the expenses of the sales, the sums remaining were to be divided equally between the parties. If after such repayment any property remained unsold, it was to be held by defendant Beggs, one-half to belong to him and the other half to the defendants Morrell. By the terms of this agreement it is provided that it was made "in order that the respective rights of the parties" thereto, might "be definitely settled and determined." Does it constitute them mining partners? A concise statement of the law defining mining partnerships will help us to answer this question. Such a partnership exists "when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the minerals therefrom, actually engage in working the same." (Civ. Code, sec. 2511.) The actual working of the mine by the joint owners is essential to a mining partnership. (22 Am. & Eng. Ency. of Law, p. 228.) The partnership arises only when the co-owners unite and co-operate in working the mine. (*Hartney* v. *Gosling,* 10 Wyo. 346, [98 Am. St. Rep. 1005, 68 Pac. 1118]; *Skillman* v. *Lachman,* 83 Am. Dec. 104, note; *Dorsey* v. *Newcomer,* 121 Cal. 213, [53 Pac. 557]; *Prince* v. *Lamb,* 128 Cal. 120, [60 Pac. 689].) The actual working of the mine by the parties together for their mutual benefit seems to be essential to the existence of the partnership relation, the parties to contribute to the expenses of the work and to share in the profits according to their respective interests. The agreement of July 13th does not seem to have contemplated any such condition. By its terms, Beggs was in sole charge of the property and whatever work was provided to be done by it, was to be done by Beggs. No money or expenses was to be advanced by the Morrells, and under the testimony, no money was advanced by them. By this contract, if any mining work was done by Beggs and profits resulted from it, no share of such profits was to be paid to the defendants Morrell. On the contrary, all moneys realized were to be retained by Beggs to be applied to indebtedness existing in his favor. In a sense it is true that the Morrells were interested in having this indebtedness discharged and the mining properties developed

and that any moneys so applied were paid to their benefit. But their interest in profits which might be so used was not a right to the profits as such, but an interest only in any balance which might remain after profits had been so used by Beggs. Their interest was similar to that of an owner who lets a mine to be worked upon shares. The latter's interest is not a property in the profits as such, but a claim against them as a fund out of which, when ascertained, he is to be compensated. This does not constitute him a mining partner. (*LeFevre* v. *Castagnio,* 5 Colo. 564; *Skillman* v. *Lachman,* 83 Am. Dec. 105, note; 22 Am. & Eng. Ency. of Law, p. 227.) The same conclusion must be reached if we regard the agreement of July 13th as having constituted the parties tenants in common of the Kate Hardy Mine. Cotenants of a mine are not necessarily mining partners, or partners at all; the actual working of the mine by the joint owners is essential to such a partnership. (22 Am. & Eng. Ency. of Law, p. 228; *First National Bank* v. *G. V. B. Mining Co.,* 89 Fed. 449.) And it must be a joint working by all of the co-owners. If one co-owner of mining property engages in working it for ore, as Beggs did in this case, and as later J. W. Morrell did, the remaining owner not so engaged does not thus become a partner; he will be left to his rights and chargeable according to his duties as a cotenant only. (*Mardar* v. *Norman,* 13 Idaho, 585, [92 Pac. 572].)

There appears to be nothing in the agreement under discussion about working any of the mines mentioned in it. As a consequence, even if that writing evidenced an association of the parties for the purpose of acquiring, developing, and dealing in mines, unless it further provided that when acquired and developed, they should be then worked on joint account, no mining partnership was created by it. (*Doyle* v. *Burns,* 123 Iowa, 488, [99 N. W. 195].)

Without discussing it further, it may be safely concluded that this argeement created no partnership relation. It appears to be a simple declaration of trust under which the defendant was to deal with the property as a trustee, wholly independent of his codefendants, subject only to the conditions of his trust.

This writing, however, is not necessarily determinative of this case. The parties could have departed from or acted independently of it, and either by agreement or as the result

of what they did, become liable as mining partners. But the evidence does not show this. Everything that was done by defendant Beggs was in harmony with his rights and duties under this trust agreement, and was done presumably in pursuance of it. When Beggs worked the mine, he did it without any association with his codefendants. He employed the men who worked it, he directed their labors and himself compensated them. He at no time worked in association with the Morrells. When J. W. Morrell took possession of and worked the mine, he did so in the absence of Beggs and without his knowledge. Beggs had previously employed men to keep Morrell off the property and when he learned that he was at the mine and working it, both by letter and by telegram he ordered him to cease work. Plaintiff was employed by J. W. Morrell after this had been done by Beggs. The record discloses no agreement to work the mine together, and no co-operation in actually working it, and consequently does not establish a liability by Beggs for the acts of Morrell.

This conclusion renders it unnecessary to consider the sufficiency of the evidence as to the reasonable value of plaintiff's services. Upon a retrial of the cause, persons competent from knowledge and experience should be found to furnish this evidence.

A writ of attachment was issued in this case on behalf of plaintiff. His affidavit for this attachment stated "that the said attachment is not sought . . . to hinder, delay or defraud any creditor or creditors of the said defendant." As there were three defendants, and the affidavit referred only to one, it did not meet the requirements of section 538 of the Code of Civil Procedure. (*Pajaro Valley Bank* v. *Scurich*, 7 Cal. App. 732, [95 Pac. 911].) This affidavit was not void, however; it lacked only in a substantive particular, and could have been amended upon motion of the plaintiff at or before the hearing of the application to discharge the writ of attachment. (Code Civ. Proc., sec. 558; *Nichols* v. *Davis*, 23 Cal. App. 67, [137 Pac. 41].) But no such amendment was suggested by plaintiff. As a consequence, the attachment should have been discharged. In justice to the trial judge, it should be stated that the deficiency in the affidavit was not pointed out by counsel, and when the motion was passed upon, the court was apparently without knowledge of it. The failure of counsel to call the particular point upon which he relied to the at-

tention of the court, and later to rely upon it as error, on appeal, is not commendable. Such practice, whether or not so intended, operates to entrap courts and to prolong litigation without serving justice.

The order refusing to discharge the attachment is reversed. The judgment is likewise reversed, and the cause remanded.

Chipman, P. J., and Burnett, J., concurred.