[Sac. No. 2327. In Bank.—December 31, 1917.]

JOHN HARPER, Appellant, v. J. T. SLOAN et al., Respondents.

MINING PARTNERSHIP — ACTION FOR ACCOUNTING — PLEADING—SUFFI-CIENCY OF COMPLAINT.—In an action for an accounting against parties claimed by plaintiff to be mining partners, where a written contract was made in 1898 with the owners of a mining claim giving the plaintiff the privilege of working the mine for a period and agreeing to convey the claim to him on the payment of a certain price, his rights to terminate on his ceasing to work or making default in payments, and the plaintiff and the defendants, in 1899, following negotiations to that end, made a written agreement referring to the contract between plaintiff and the owners and reciting that the plaintiff desired to transfer two-thirds of his interest to the defendants, and also stating (though somewhat obscurely) that this interest was to "pass to and vest in" the defendants, and that the defendants were to pay the plaintiff a sum of four thousand dollars in 1899 and a further sum of three thousand dollars in 1900, if in their opinion "it should be necessary," that the money was to be used in developing the claim which the plaintiff was to "direct and control," and that if the plaintiff re-

ceived a conveyance of the claim he should convey to the defendants two-thirds thereof, and on the making of this agreement the plaintiff, who had previously been in possession under his contract with the owners, continued in possession and in the actual working of the mine, a complaint alleging in substance those facts sufficiently alleges a mining partnership under section 2511 of the Civil Code, declaring that " a mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same."

ID.—OWNERSHIP OF FEE OF MINING PROPERTY NOT NECESSARY.—It is not necessary to the existence of a mining partnership that the property which is to be operated be owned in fee by the partners.

ID.—RIGHT TO ACCOUNTING AGAINST PARTNERS.—A mining partner who has expended money and labor in the partnership enterprise is entitled to an accounting to settle the relative rights of himself and his copartners.

ID.—DISSOLUTION OR ABANDONMENT.—If by any later transactions such partnership was dissolved or abandoned, there still remains the right to an accounting of transactions prior to the dissolution or abandonment.

ID.—PLEADING—DELAY—LACHES.—Delay amounting to laches in seeking relief, in such an action for an accounting between partners, is a matter of defense, and is not to be considered upon a general demurrer to a complaint.

APPEAL from a judgment of the Superior Court of Sierra County. Stanley A. Smith, Judge.

The facts are stated in the opinion of the court.

Frank R. Wehe, and W. I. Redding, for Appellant.

Charles F. Hanlon, for Respondents.

SLOSS, J.—The plaintiff appeals from a judgment of dismissal entered upon the sustaining of a demurrer to his amended complaint, without leave to amend. The demurrer was based upon both general and special grounds. The court put its ruling upon the single ground that the complaint failed to state facts sufficient to constitute a cause of action, and, in effect, gave this as its reason for refusing leave to amend. We shall, therefore, limit our consideration to the question actually decided by the court below.

The complaint states these facts: On December 24, 1898, James McGregor and B. B. Lewis were the owners of the Diadem Quartz Claim, an unpatented lode mining claim in Sierra County. On that day they made a written contract with the plaintiff, wherein it was agreed that Harper should take possession of the property, and should have the privilege of working and developing the same, such work, the extent of which was defined, to commence on or before May 1, 1899. Harper was to have the privilege of purchasing the property for six thousand dollars, of which three thousand dollars was to be paid on or before November 1, 1899, and three thousand dollars on or before May 1, 1900. Upon payment of the purchase price in full, Lewis and McGregor agreed to convey the property to Harper. Harper's rights under the contract were to cease in case he should fail to do the work agreed upon or to make the payments.

Upon the making of such contract the plaintiff took possession of the claim, and commenced negotiations with the defendants, Sloan and Dwyer, whereby said defendants "became jointly and equally interested with plaintiff in the said contract and promised to engage with plaintiff in actually working said property and extracting the mineral therefrom." On February 9, 1899, and following the said negotiations, a written contract was made between plaintiff and said Sloan and Dwyer. This agreement, after referring to the contract of December 24, 1898, between Harper, McGregor, and Lewis, went on as follows:

"Whereas the party of the first part [Harper] wishes to transfer to the parties of the second part [Sloan and Dwyer] two-thirds of his interest in and under the aforesaid contract between himself and James McGregor and B. B. Lewis, shall pass to and vest in the said parties of the second part, and the parties of the second part agree that they will, on or before the first day of March, 1899, pay to the party of the first part, the sum of four thousand dollars (4,000) and the sum of three thousand (3,000) dollars on or before the first day of June, 1899, and if, in the opinion of the parties of the second part, it should be necessary, the further sum of three thousand (3,000) dollars, on or before the first day of September, 1899. That the whole of the money so paid by the parties of the second part with the exception of the expenses of the party of the first part shall be used

in the development and working of the aforesaid Diadem Quartz Claim, which the party of the first part shall direct and control; and if the development and working of the Diadem Quartz Claim should be permanently abandoned by the party of the first part, and any money paid by the parties of the second part should be unexpended, the party of the first part shall return the same to J. T. Sloan, one of the parties of the second part.

"That if James McGregor and B. B. Lewis should, according to the terms of their contract of December 24th, 1898, convey the Diadem Quartz Claim to the party of the first part herein, the party of the first part will, within a reasonable time thereafter, make a conveyance to the parties of the second part of two-thirds thereof; and it is further agreed that thereafter the party of the first part shall have the man-agement and control of the operating of the said mine, for which he shall be paid an adequate compensation."

The complaint goes on to allege that, upon the making of this agreement, plaintiff, on behalf of himself and said defendants, continued in the possession of the said property, and actually engaged in working the same, and commenced to extract the mineral therefrom, and that plaintiff and said defendants actually engaged in the working and development of said claim and extraction of the mineral therefrom, and ever since have continued in the actual working of said claim, and then became and ever since have been mining partners.

The defendants, Sloan and Dwyer, paid plaintiff the sum of four thousand dollars on or before March 1, 1899, and the sum of three thousand dollars on or before June 1, 1899, all of which was expended in the actual working of the property. The payment of the further sum of three thousand dollars on or before the first day of September, 1899, became necessary for the working of the property, and plaintiff requested payment of said sum from Sloan and Dwyer, but they refused to make said payment. Plaintiff and said defendants continued in the possession of the claim, the plaintiff managing and actually working the same for the partnership until plaintiff had expended on the claim all of the said seven thousand dollars, and more than two thousand dollars additional, advanced by himself. After such expenditure he had extracted from the claim not more than eight thousand dol-

lars gross, out of which he paid the purchase price of the claim to McGregor and Lewis, and on December 8, 1899, said McGregor and Lewis conveyed the claim to plaintiff "in trust for himself and for said defendants Sloan and Dwyer as provided for in said contract." The plaintiff undertakes in his complaint to excuse his failure to make a deed of the two-thirds of the mine to Sloan and Dwyer. For reasons that will appear hereinafter, we need not detail the facts relied on in this behalf. The plaintiff alleges that he has always been ready and willing to execute a deed or deeds to the persons entitled thereto, and ever since the execution of the deed by McGregor and Lewis to him he has held two-thirds of the property in trust for the parties entitled thereto. With the consent of the defendant Sloan, the plaintiff continued the work until the partnership became indebted in the sum of about two thousand dollars during the year 1900. To meet this indebtedness the plaintiff was compelled to mortgage the property to one Sayles, and thereafter, in order to satisfy the Sayles mortgage, to execute a new mortgage to F. W. Sharon, to secure the sum of $2,250, and further sums. Plaintiff has continued in the possession of the property, and has made the annual expenditure of one hundred dollars necessary under the laws of the United States; he has also devoted considerable time to the management and control of the mine, the reasonable compensation for which would be the sum of $2,418. He has also paid taxes on the property aggregating $229.67. Including the sum due to Sharon, the mortgagee, the advances and obligations thus made and incurred aggregate the sum of $6,665.30, no part of which has been paid or contributed by the defendants, or either of them. Finally, the complaint, in order to anticipate a possible plea of the statute of limitations, alleges that Sloan and Dwyer were out of the state for the greater part of the time intervening between the making of the contract and the commencement of the action.

The prayer is for a decree that plaintiff holds the property in trust to the extent of one-third for himself and two-thirds in Sloan and Dwyer, or their successors; that an accounting be had of the affairs of the partnership and of said trust; that plaintiff have judgment against the defendants for their proportion of the said indebtedness and advances of plain-

tiff, that such sum be adjudged a lien on the property, and that the property be sold to satisfy the same.

The theory of the complaint is that the agreement between the plaintiff, Sloan, and Dwyer, and the transactions had under it, created a mining partnership between the three, and that plaintiff is entitled to an accounting of the affairs of such partnership, together with the incidental relief which would follow such accounting. The main contention of the respondents is that no such partnership was ever created.

Under section 2511 of the Civil Code, "a mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same." The respondents contend that there was no such partnership, because at the date of the agreement between Harper, Sloan, and Dwyer the parties thereto did not own, nor had they then acquired, the mining property, and that they did not "actually engage in working" the claim.

It is true that when the contract was made, title was still in Lewis and McGregor. It is not necessary, however, to the existence of a mining partnership that the property which is to be operated be owned in fee by the partners. Under his contract with McGregor and Lewis, Harper was entitled to the possession of the property, and had the right, on complying with certain conditions, to acquire its ownership. This gave him an interest in the property, and such interest could well form the subject of a mining partnership. (3 Lindley on Mines, 3d ed., sec. 798.) The agreement between Harper, Sloan, and Dwyer was, we think, designed to pass to Sloan and Dwyer an undivided two-thirds of such interest. That agreement reads, in part, as follows: "Whereas, the party of the first part [Harper] wishes to transfer to the parties of the second part [Sloan and Dwyer] two-thirds of his interest in and under the aforesaid contract between himself and James McGregor and B. B. Lewis, shall pass to and vest in the said parties of the second part . . ." It is evident that, through inadvertence, there was an omission of some words which should have been inserted after the name "Lewis." The clause "shall pass to and vest," etc., is left without a subject. It is followed by a declaration that the parties of the second part agree to certain things. It seems reasonable to assume that the missing words were

intended to set forth the reciprocal obligation of Harper, i. e., that the two-thirds interest shall pass to and vest in the parties of the second part. If thus completed, the agreement would read, in substance, as follows: "Whereas, Harper wishes to transfer to Sloan and Dwyer two-thirds of his interest in the contract between himself and McGregor and Lewis, *Harper agrees that such two-thirds* shall pass to and vest in Sloan and Dwyer, and Sloan and Dwyer agree that they will pay to Harper" the sums stated. This mode of supplying the ellipsis is entirely in accord with the language preceding and following the omission, and indicates, we think, the meaning which the parties designed to express in their agreement. The subject matter of the transfer mentioned in the agreement was two-thirds of Harper's interest under the McGregor and Lewis contract, and the parties looked to a present passing of such two-thirds. The respondents argue that the subsequent clause, requiring Harper to make conveyance to them of two-thirds of the property, if he should obtain a conveyance from McGregor and Lewis, shows that their interest and any partnership relation were to arise only when Harper should thus have made a deed to them. We cannot agree to this interpretation of the contract. The parties were contracting at a time when Harper could not transfer a legal title to the defendants, because he had not yet acquired it. Under the agreement, the defendants bound themselves to pay seven thousand dollars before Harper should become entitled to a deed from McGregor and Lewis. It is not to be supposed that they were undertaking to make such payments without acquiring any interest in such rights as Harper then had. The provision for a conveyance, when Harper's interest should ripen into a legal title, did not prevent the present passing of two-thirds of Harper's existing rights under his contract with McGregor and Lewis.

The provision for a return to Sloan of unexpended moneys does not require a different interpretation. It merely prescribed a basis of settlement in the event, which did not take place, of an abandonment of the enterprise by Harper. Clearly, the parties were dealing with the contingency of an abandonment by Harper before the exercise of his right to claim a conveyance from McGregor and Lewis. He was not, even during the period preceding his election to abandon or to pay the purchase price, operating the property for him-

self alone. He was to "direct and control" the development
and working, with the money furnished for that purpose by
Sloan and Dwyer. The agreement contemplated that, until
Harper should exercise his option, or abandon the develop-
ment, the property should be worked for the common interest
of the three. If the operations during this period had re-
sulted in large profits, and Sloan and Dwyer had, after
Harper had obtained his deed, demanded a share of such
profits, a court of equity would not have listened with much
patience to a plea, on the part of Harper, that there was no
partnership because he had not conveyed to his associates
the interest in the claim to which they were entitled.

But, if it be said that there was to be no partnership until
the defendants had become the owners of two-thirds of the
claim, the result would not be different. It is alleged that
the defendants paid the seven thousand dollars which con-
stituted the full consideration for their acquisition of two-
thirds. (The complaint does not show any default in the
payment of the third installment of three thousand dollars,
which was to be paid only if, in the opinion of Dwyer and
Sloan, it should be necessary.) Upon the payment of the
full purchase price, therefore, Dwyer and Sloan became the
equitable owners of two-thirds of the property, and such
equitable ownership was a sufficient basis for the existence
of a partnership, after the date when Harper obtained his
deed from McGregor and Lewis. It is unnecessary, there-
fore, to inquire whether the facts set up by Harper in ex-
planation of his failure to convey to the defendants were
sufficient to excuse his omission.

It is further contended that, under the code section already
cited, the alleged partners must "actually engage in working
the mine." While the complaint avers that plaintiff and
the defendants continued in the possession of the claim, and
actually engaged in working the same, the pleading, read as
a whole, shows plainly enough that the work was being done
by the plaintiff alone. The contract between the parties
provides that the seven thousand dollars to be paid by the
defendants is to be used in the development and working of
the claim, and it is alleged that this sum was actually so
expended. We do not understand that it is essential to a
mining partnership that each of the partners shall actually
perform physical work upon the claim. Where one of them

supplies money which is to be used in working the claim, he is engaged in such work as truly as is the one who devotes his own labor to the enterprise. (3 Lindley on Mines, 3d ed., sec. 798; *Lyman* v. *Schwartz,* 13 Colo. App. 318, [57 Pac. 735].) The cases cited by the respondents are not in point. They have to do with agreements whereby one is to work for another in a mine, receiving as compensation a share of the proceeds, or providing for the mere acquisition of an interest in a mine.

If, then, there was a mining partnership under which the plaintiff expended money and labor, he is entitled to an accounting in order to settle the relative rights of himself and his copartners. If, by virtue of any later transactions disclosed by the complaint, the partnership was dissolved or abandoned, there still remains the right to an accounting of the transactions prior to such dissolution or abandonment. The plaintiff's delay in seeking relief is not a consideration which can arise upon a general demurrer to the complaint. If he was guilty of laches, it is a matter of defense. Nor need we inquire on this appeal whether the plaintiff was entitled to charge the defendants with all of the items of expenditure or indebtedness set up in the complaint. He may in his pleading have sought to charge the defendants with more than they are liable for, but this does not justify the dismissal of his action upon the sustaining of a demurrer for want of facts.

The judgment is reversed.

Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.

MELVIN, J., Dissenting.—I dissent.

I adhere to the views expressed in the opinion in Department. Even if we reconstruct the contract between Harper and his vendees by inserting the words furnished by Mr. Justice Sloss in his opinion, it does not contemplate *an immediate* vesting in them of two-thirds of Harper's interest in his contract with his vendors Lewis and McGregor; and it seems to me that a transfer of present interest in the original contract could not have been in the minds of the parties because Harper kept the right to abandon the mine at his sole pleasure as well as to forfeit all rights under his agreement with the original locators. This privilege retained by Harper is not consistent, I believe, with a mining partnership

then created between him and Sloan and Dwyer. That part of the agreement which gives to Sloan and Dwyer the privilege of refusing further advances after the exhaustion of their first payments is strongly indicative to my mind of the understanding between them and Harper that they were merely getting an option to purchase two-thirds of the interest which should be his if he could successfully meet the requirements of his agreement with McGregor and Lewis. If Sloan and Dwyer had been purchasing a present interest in Harper's contract with McGregor and Lewis, it would not have been necessary to insert in their agreement the clause to the effect that "if James McGregor and B. B. Lewis should, according to the terms of their contract of December 24, 1898, convey the Diadem Quartz Claim to the party of the first part herein, the party of the first part will, within a reasonable time thereafter, make a conveyance to the parties of the second part of two-thirds thereof; and it is further agreed that thereafter the party of the first part shall have the management and control of the operating of the said mine, for which he shall be paid an adequate compensation."

I can see nothing in the contract itself which justifies the supplying of a verb of immediate assignment, and I do not agree with Mr. Justice Sloss in supplying the words "Harper *agrees*," etc. Why should Harper in one part of the sentence express a wish to transfer his interest in the contract with McGregor and Lewis and then fulfill the wish by executing an immediate transfer in another part of the same sentence? The words "the party of the first part wishes to transfer," etc., indicate a desire to make the transfer *in the future*. It seems to me, therefore, that a more logical reconstruction of the sentence would be as follows: "Whereas, the party of the first part wishes to transfer to the parties of the second part two-thirds of his interest in and under the aforesaid contract between himself and James McGregor and B. B. Lewis, *and wishes that such interest* shall pass to and vest in the said parties of the second part and the parties of the second part agree," etc. This would give to the agreement a prospective operation so far as the transfer of Harper's interest is concerned, more in consonance with the rest of the instrument. If, after expending the moneys paid by Sloan and Dwyer and their refusal to advance any more, Harper had abandoned his contract with McGregor and

Lewis, they would have had no recourse against him, because they would have received just what they bargained for, an option to buy an interest in the contract and the mine in case of Harper's success. There was no provision in the agreement binding them to share Harper's losses beyond the payment of his "expenses"—not salary nor "compensation" such as that which was to be his in case they secured a two-thirds interest by assignment—and they were to have no voice regarding methods nor scope of operation. To be sure there may be partnerships in which one partner has large powers of management and control of the business, but in analyzing this instrument we must remember that laymen signing such a contract would scarcely consider themselves partners if they were not plainly made by it sharers in the profits and losses. As I wrote in the opinion in Department I repeat here: "The others advanced money for the purchase of Harper's interest in the mine in case he ever acquired any interest. There was no provision by which they were to share in the output or be responsible for Harper's expenses in the operation of the property until there should have been an actual conveyance of an interest to them by Harper after he should have acquired it from the original locators."

Henshaw, J., concurred.

The opinion in Department referred to in the dissenting opinion of Melvin, J., follows:

MELVIN, J. — Defendants' demurrer to plaintiff's amended complaint was sustained without leave to amend. From the judgment following such order the plaintiff appeals.

The theory of the amended complaint is that the transactions described therein were such as created a mining partnership between plaintiff and defendants; that appellant held the property of said partnership in trust and that he was entitled to a lien thereon for certain advances made by him. The complaint avers substantially the following facts:

McGregor and Lewis owned a certain described mining claim in Sierra County. This was and is an unpatented lode mining claim possessed by virtue of a location made in 1895 in accordance with the mining laws of the United States and

the local rules then in force in that county. The claim was of such a nature that large sums of money were required for its development.

On December 24, 1896, McGregor and Lewis entered into a written agreement with Harper, the plaintiff in this suit, whereby the said Harper was to work and develop the claim and deposit the gross yield therefrom with one Sayles, who was to deliver such deposit to the vendors in case Harper should fail to pay the purchase price of six thousand dollars, one-half payable by November 1, 1899, and the balance on or before May 1, 1900. It was provided that upon full payment of the purchase price McGregor and Lewis would convey their title to Harper.

Immediately following the execution of the contract Harper took possession of the claim, and on February 9, 1899, entered into a written agreement with the defendants, Sloan and Dwyer, whereby Harper promised to convey to them a two-thirds interest in his contract with McGregor and Lewis upon these terms: Four thousand dollars on or before March 1, 1899, and three thousand dollars on or before June 1, 1899, "and if, [to quote directly from the agreement] in the opinion of the parties of the second part, [Sloan and Dwyer] it should be necessary, the further sum of three thousand (3,000) dollars, on or before the first day of September, 1899." It was stipulated that all of the money so paid, with the exception of Harper's expenses, should be used to pay for work on the claim under his direction and control. The contract further provided that if McGregor and Lewis should convey to Harper under the terms of their agreement, the latter would, "within a reasonable time," make a conveyance to Sloan and Dwyer of a two-thirds interest in the mine, and that "thereafter" Harper should have management and control of the operating of the mine, for which he should be paid "an adequate compensation." There was also a clause in this agreement providing as follows: "If the development and working of the Diadem Quartz Claim should be permanently abandoned by the party of the first part, [Harper] and any money paid by the parties of the second part should be unexpended, the party of the first part shall return the same to J. T. Sloan, one of the parties of the second part."

The pleading contains further averments that "upon the making of said contract last set out plaintiff, on behalf of

himself and said defendants Sloan and Dwyer, continued in the possession of the said property and actually engaged in working the same and commenced to extract the mineral therefrom, and that said plaintiff and said defendants Sloan and Dwyer then actually engaged in the working and development of said claim and extraction of the mineral therefrom, and ever since have continued in the actual working of said claim, and then became and ever since have been mining partners, and that said mining partnership has never been dissolved, except that said defendants Sloan and Dwyer have refused to contribute their proportion of the expenses of the said working of said property other than as hereinafter alleged.''

Next follow allegations that defendants paid seven thousand dollars according to the terms of their agreement; that all of this money was expended in actual mining operations; that it became necessary for the working of said property that the further sum of three thousand dollars should be paid on or before September 1, 1899; that plaintiff asked Sloan and Dwyer to pay such amount; but that they refused to do so. There are statements in the pleading that plaintiff and defendants continued in the possession of the claim, ''said plaintiff managing and actually working the same for said partnership as aforesaid, and continued in the said working until he had expended upon the said claim all of the said sum of seven thousand (7000) dollars, and other sums of money, exceeding more than two thousand (2000) dollars advanced by himself.'' It is averred that after the expenditure of more than nine thousand dollars the plaintiff Harper had extracted from the mine eight thousand dollars, out of which he paid the purchase price, six thousand dollars, to McGregor and Lewis, who, on December 8, 1899, conveyed their interest in the property to Harper, ''in trust for himself and for said defendants Sloan and Dwyer as provided for in said contract, which said deed was recorded at pages 143 et seq. of Book No. 15 of Deeds, Sierra County Records, to which reference is hereby had, and then and thereby said plaintiff and said Sloan and Dwyer became the owners of said mining claim in equal shares, that is to say, one-third each.'' We may remark, in passing, that this averment is in direct contradiction of the contracts which did not provide for a conveyance in trust by the vendors to Harper and did not

contemplate the ownership by the defendants of an interest in the claim until an actual conveyance should be made to them by Harper.

Plaintiff pleads the following excuses for not making a deed to Sloan and Dwyer of two-thirds interest in the mine: (a) Plaintiff was informed and believed that on July 17, 1899, Sloan conveyed a one-twelfth interest in the mining property to Lord William Beresford. (b) Sloan instructed plaintiff to make no deed to any person of any portion of the mining claim until he, Sloan, should give further instructions. (c) On May 21, 1901, Dwyer conveyed all of his share in the property to Sloan. (d) Prior to July 2, 1901, Lord Beresford died and his widow, as executrix of his last will, reconveyed to Sloan. (e) Plaintiff, although always ready to execute a deed agreeably to the strict terms of his contract, was unable to ascertain to whom he should convey until further instructed by Sloan.

It is further pleaded that after the execution of the trust deed to Harper he and the defendants, as mining partners, continued to work the claim. This work was prosecuted until the end of December, 1900, but yielded no profit. Plaintiff called upon defendants to contribute to his expenses the three thousand dollars ''as provided in the contract,'' but they refused to make further payments, although Sloan consented to the work and advised Harper to continue it. Acting upon said advice, and with Sloan's approval, plaintiff ''continued the said work until said partnership became indebted in the sum of about Two thousand (2000) dollars, during the said year 1900.''

To pay this indebtedness Harper mortgaged the mine to Sayles for $1,377.84, and thereafter, Sayles' assignee demanding payment and Sloan and Dwyer refusing to contribute to the settlement of said debt, Harper negotiated a loan from Sharon and executed a note and mortgage for $2,252.30 to pay the Sayles note and discharge the earlier mortgage.

From December, 1901, plaintiff was unable to work the claim continuously, but each year, to and including 1913, he expended for the alleged partnership more than one hundred dollars for assessment work.

Plaintiff sues for compensation for all of his time employed in the management and control of the property for more than one year and six months up to the end of December, 1900, and

for one month of each of the following thirteen years; also for the taxes paid by him until 1913, inclusive.

There are allegations that Dwyer departed from California about four months after entering into the contract with Harper and did not return, and that Sloan departed at the same time but returned to California in December, 1900, remaining but five months, during which time he was informed of the conditions of the mining property "and of its indebtedness, and he consented to the same and promised to pay and advance to the said partnership the whole thereof."

It will be seen at once that appellant's claims against the defendants must depend upon the existence of a mining partnership as defined by section 2511 of the Civil Code, which is as follows: "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same."

Examining the written instrument which is pleaded as the basis of the claims of Harper against defendants, we see at once that it is not a copartnership agreement whereby from its execution Harper, Sloan, and Dwyer were to work the claim as partners. The others advanced money for the purchase of Harper's interest in the mine in case he ever acquired any interest. There was no provision by which they were to share in the output or be responsible for Harper's expenses in the operation of the property until there should have been an actual conveyance of an interest to them by Harper after he should have acquired it from the original locators. Toward them Harper did not sustain the relation of a mining partner, for he had not *owned* nor *acquired* the claim with them for the purpose of working it and extracting the mineral therefrom. He was in much the same position as was the plaintiff in *Stuart* v. *Adams,* 89 Cal. 367, [26 Pac. 970], who had contracted with the owners to work the mine, pay one-half the expenses thereof, and receive one-half of the product for his labor—such an arrangement as this court decided does not make the parties to it mining partners. Harper's arrangement with his vendors differed only from the one discussed in the Adams case in that he was to pay all of the expenses of working the mine and to place the product in escrow, meanwhile having nothing but an option to purchase the claim and the product within a certain time for a stated amount of

money. Similarly the contract of Harper with the defendants gave the latter the right to a conveyance of part of Harper's interest if he ever should purchase, *after* which he should be entitled to an adequate consideration for "the management and control of the operating of said mine." We see no escape from the conclusion that there was to be no partnership until Sloan and Dwyer became part owners.

The excuses offered by plaintiff in his pleading for his failure to convey are not sufficient. Sloan's rumored conveyance to Lord Beresford surely was not sufficient reason for Harper to ignore the terms of his agreement with defendants. Nor did Sloan's instructions to delay conveyance justify a change in the written agreement, and, of course, such directions were of no effect in relation to Dwyer. Nor did Lady Beresford's reconveyance to Sloan operate to change the contract. Dwyer's conveyance to Sloan had no such effect, either. Both of the transactions last mentioned occurred more than a year after plaintiff obtained title, and he never had created a mining partnership nor any other sort by making the conveyance prescribed by the written agreement to be made within a reasonable time after he should become the owner of the claim. The engagement of the defendants was to buy a two-thirds interest in a mine if it should be acquired. They paid seven thousand dollars for such interest, but Harper worked the mine on his own account and never carried out his promise to convey. Therefore, he cannot take advantage of his own violation of the agreement of sale and at this late day seek to compel defendants to pay a mortgage placed by him upon his own property without their consent. Nor may he compel them to compensate him for work done upon his own claim without authorization from them. A contract to buy an interest in a mine is not a mining contract. (*Prince* v. *Lamb*, 128 Cal. 120, [60 Pac. 689).] An agreement to the effect that if A should secure a paying mine through the efforts of B, said A would, in addition to wages, give B an interest in the mine is not an agreement establishing a mining partnership. (*Berry* v. *Woodburn*, 107 Cal. 504, [40 Pac. 802].) An agreement that upon the happening of some contingent future event the parties to the contract will operate a mine does not constitute a mining partnership. (*Dorsey* v. *Newcomer*, 121 Cal. 213–216, [53 Pac. 557].)

The conveyance of the property to plaintiff in trust for him and the defendants did not create a mining partnership. Before they could be charged as partners they must have engaged in working the mine. (*Peterson* v. *Beggs*, 26 Cal. App. 760, [148 Pac. 541].)

As there was no mining contract the whole fabric of appellant's argument is destroyed, and it follows that the superior court did not err in sustaining the demurrer.

Judgment affirmed.

Henshaw, J., and Lorigan, J., concurred.