[Civ. No. 209. Fifth Dist. Sept. 20, 1963.]

NELLIE E. DALY, Individually and as Executrix, etc., Cross-complainant and Appellant, v. V. R. SMITH et al., Cross-defendants and Respondents.

Di Giorgio & Davis and Thomas R. Davis for Cross-complainant and Appellant.

Bennett Siemon, in pro. per., Borton, Petrini, Conron, Brown & Condley and George A. Brown for Cross-defendants and Respondents.

CONLEY, P. J.—This is an appeal by the cross-complainant, Nellie E. Daly, individually and as executrix of the estate of her husband, A. D. Daly, from a judgment denying recovery for trespass and the removal and conversion by the trespassers of 4,663 tons of gypsite from mining claims in the Mohave Desert. Originally, V. R. Smith, Helen Smith, H. E. Barnett, Leona Barnett, Pete Cassou, Freda Cassou, Alfred Siemon and Bennett Siemon brought suit to quiet their alleged title to the mining claims here involved; they claimed title by reason of having relocated the identical mining claims owned by the Dalys. Mr. Daly died prior to the institution of the suit. The first trial resulted in a judgment for the plaintiffs, but that judgment was reversed by the Fourth District Court of Appeal (*Smith* v. *Daly*, 181 Cal.App.2d 154

[5 Cal.Rptr. 176]), and it was thereafter retried on all of the issues.

Prior to the commencement of the second trial, Harold E. Meyer was substituted in the place and stead of the original plaintiffs. The second trial resulted in an order that judgment be entered in favor of Mrs. Daly and others as to title and that plaintiff Meyer take nothing by his action. On the cross-complaint the evidence showed that 4,663 tons of gypsite had been removed from the Daly claims by all, or at least some, of the cross-defendants, but the court refused to allow any damages on the ground that while the trespass was committed "with knowledge of the material facts," it was carried on "in the honest though mistaken belief that said claims were open to relocation as a matter of law"; said honest but mistaken belief was based upon the legal opinion rendered to said cross-defendants by one Alfred Siemon, "an experienced and competent mining attorney"; the trial court concluded that as cross-defendants "realized no profit from the sale of the 4,663 tons of gypsite taken during the trespass aforesaid," no damages should be allowed.

The court below found that neither plaintiff nor his assignors owned the placer mining claims described in the complaint as Gypsy, Buffalo, Chicago, New York and San Francisco mining claims; that notices of location for all of these claims were in fact posted and recorded by plaintiff's predecessors in interest but that the land was not open to location under the mining laws; that A. D. Daly performed labor or improvements as required by law for the year ending July 1, 1957; that the lands were not vacant; that Nellie Daly, executrix of her deceased husband's will and testament, has succeeded to all rights of A. D. Daly, such rights not being subject to the rights of plaintiff; that at the time of his death Daly owned the following placer mining claims: Gypsy, Buffalo, Chicago, New York and San Francisco; that defendant George Arnett owns the Los Angeles placer mining claim; that claims of the cross-defendants are without foundation and cross-defendants are without any right to the mining claims; that defendants did the assessment work required by law on the claims in 1956-1957; that plaintiff's predecessors in interest and Daly by written contract, through letters, agreed that gypsite was to be puchased at a fixed rate per ton and that plaintiff's predecessors acquired an option to buy the claims for $100,000 on or before June 15, 1956; that during 1956-1957 plaintiff's predecessors removed

gypsite ore under the above terms; that after January 1957 Daly was unable to conduct the operations necessary to effectuate f.o.b. delivery of the ore to plaintiff's predecessors; that plaintiff's predecessors in interest conducted the operations themselves; that they knew of Daly's failing health and knew of assessment work done or not done, and knew Daly was living in a home contiguous to the claims; they relied on facts gained under the contractual relationship in 1956-1957 to make the purported relocation of the subject mining claims; that cross-defendants attempted to file new locations over the locations belonging to cross-complainant and exclude cross-complainant from possession and operation of the claims; that entry of cross-defendants on the mining claims constituted a trespass; that cross-defendants removed 4,663 tons of gypsite; the sale price realized by cross-defendants averaged $8 per ton; the average cost of transportation to the customer was $4 per ton; that the f.o.b. sales price was thus $4 per ton; that cross-defendants committed said trespass with knowledge of the material facts but "in the honest or mistaken belief that said claims were open to relocation as a matter of law" based upon the legal opinion of Alfred Siemon, an "experienced and competent mining attorney." The court also found that cross-defendants realized no profits from the sale of the 4,663 tons of gypsite taken during the trespass.

The judgment declared that appellant as executrix of the estate of A. D. Daly, and appellant Nellie Daly and Pancho Barnes owned the Gypsy, Buffalo, Chicago, New York, and San Francisco placer mining claims; that George Arnett owned the Los Angeles placer mining claim; that cross-defendants have no rights in or to said claims; that cross-complainant take nothing by the cross-complaint.

An appeal was filed by the plaintiff Meyer from that portion of the judgment on the complaint which held that he should take nothing by his suit. Subsequent to the filing of the appeal, Mr. Meyer's attorneys were substituted out of the case, and he thereafter represented himself in propria persona. As he failed to file his opening brief, the court in due course gave him the 30-day notice prescribed in rule 17(a) of the California Rules of Court*; thereafter, two extensions of 30 days each were granted to him, and no further extension of time having been secured and no valid excuse having been

*Formerly Rules on Appeal, rule 17(a).

shown for his failure to comply with the rules, his appeal was dismissed. (Cal. Rules of Court, rule 17(a).) The sole question for consideration by this court, therefore, is whether or not the appeal on the cross-complaint filed by Mrs. Daly is meritorious.

■ The trial court found that the removal of the mineral product from the land owned by the cross-complainant was done in good faith. The question of good faith becomes important if any damages are to be allowed, for the rules applicable to a wilful trespass and a trespass committed in good faith are different.

In a note in American Law Reports, volume 7, page 908, it is stated with respect to the rule of damages for an innocent trespass: "It is the prevailing rule that a trespasser who encroaches on the land of another, mining and removing minerals, if the taking is inadvertent or under a claim of right or a bona fide belief of title, is liable in damages only for the minerals removed, based on their value as they lay in the mine before being disturbed, or, as is often expressed, their value in situ. And if evidence is not obtainable of the value of the minerals in situ, or if the circumstances of the case make it impracticable to fix their value in this manner, the same result is generally arrived at by proving their value at the mouth of the pit, and deducting therefrom the expense of mining and transporting them to that place."

Somewhat differently expressed but to the same effect is the rule set forth in 58 Corpus Juris Secundum, Mines and Minerals, section 137, page 237: "Where the trespass is an innocent one, as it is where a person by mistake, or unintentionally and in the honest belief that he is exercising a right which he has, enters on the property of another, and takes ore, coal, oil, or other mineral therefrom, the rule supported by the weight of authority is that the measure of damages is the value of the mineral in place, or, as sometimes stated, the value of the mineral extracted from the ore, less the cost of mining and milling."

(See also *Empire Gold Mining Co.* v. *Bonanza Gold Mining Co.*, 67 Cal. 406 [7 P. 810]; *Lightner Mining Co.* v. *Lane*, 161 Cal. 689 [120 P. 771, Ann. Cas. 1913C 1093]; *Quetin* v. *Caubu*, 58 Cal.App.2d 793, 798 [137 P.2d 880]; *Ehrhart* v. *Bowling*, 36 Cal.App.2d 503, 509 [97 P.2d 1010]; *Union Oil Co. of California* v. *Reconstruction Oil Co.*, 20 Cal.App.2d 170, 185 [66 P.2d 1215].)

On the other hand, where there is a wilful trespass the rule

is as follows: "... if the taking is reckless, wilful, or intentional, or without claim of right or title, the trespasser is liable for the enhanced value of the product when and where it is finally converted to the use of the trespasser, without any deduction for expenses incurred, or for any value he may have added to the mineral by his labor." (Note 7 A.L.R., Wilful Trespass, p. 922.)

And it is said in 58 Corpus Juris Secundum, Mines and Minerals, section 137, page 239: "A person who, with knowledge of the right or claim of the owner, wilfully and intentionally enters and takes mineral from the land of another is a 'wilful trespasser,' and recovery against him is not confined to royalty value, or to value of the mineral in place, or to the sale price after deductions for expense incurred, but, instead, extends, without deduction of expenses, to the full enhanced value of the mineral at the time and place of severance, taking, or appropriation, or, in other words, the full value at the mouth of the mine, this being the place where, for all practical purposes, the severance and appropriation are completed."

(See *Dolch* v. *Ramsey*, 57 Cal.App.2d 99 [134 P.2d 19]; *Pacific Western Oil Co.* v. *Bern Oil Co.*, 13 Cal.2d 60, 73 [87 P.2d 1045]; *Union Oil Co. of California* v. *Reconstruction Oil Co., supra*, 20 Cal.App.2d 170.)

■ The question whether or not the cross-defendants acted without fraud and in good faith was one of fact to be determined by the court from the evidence: "Questions of good faith and actual possession resting on conflicting evidence were properly matters of fact lying within the province of the trial court." (*Pepperdine* v. *Keys*, 198 Cal.App.2d 25, 33 [17 Cal. Rptr. 709].)

*Ehrhart* v. *Bowling, supra*, 36 Cal.App.2d 503, 511, lays down the same rule: "It was for the jury to determine whether or not the defendants acted in good faith."

■ In the opinion written by Sanborn, Circuit Judge, in *United States* v. *Homestake Mining Co.*, 117 F. 481, 483, 485-486 [54 C.C.A. 303], the commonsense reasons for making a distinction as to damages caused by a wilful and an innocent trespasser on mining and forest land are set forth:

"Every trespasser breaks the law, and to every trespasser the maxim applies that every man knows the law. Notwithstanding all this, the law, in its wisdom, perceives the marked difference in the heinousness of the offenses of those who recklessly, or with actual intention to rob others of their rights, trespass upon their property, and of those who tres-

pass by mistake, and with no evil purpose, no actual, wilful intent to commit a wrong; and it declares that the former class shall pay to their victims the full value of the lumber or the ore they take at the time they sell or use it, while the latter class shall be relieved from liability upon restitution of the value of the timber in the trees or of the value of the ore in the mine. The maxim that every man knows the law applies to all the members of both classes alike. It neither differentiates the classes nor their members, and it has no more relevancy to the real question which cases of this character present than the proposition that three and three are six. That question is always based on the conceded propositions that the defendant has violated the law and that every man knows the law. The question, then, is, did the trespasser violate the law, which he constructively knew, recklessly, or with an actual intent to do so, and to take an unconscientious advantage of his victim, or did he violate it inadvertently, unintentionally, or in the honest belief that he was exercising his own right? If the former, he was a wilful trespasser, and the value of the manufactured timber or the extracted ore measures his liability. If the latter, he was an innocent trespasser, and the value of the wood in the tree or of the ore in the mine is the limit of his indebtedness. The test to determine whether one was a wilful or an innocent trespasser is not his violation of the law in the light of the maxim that every man knows the law, but his honest belief, and his actual intention at the time he committed the trespass; and neither a justification of the acts nor any other complete defense to them is essential to the proof that he who committed them was not a wilful trespasser.''

The basis of the relocation of the mines by the cross-defendants was, according to the findings, the legal opinion of Alfred Siemon, ''an experienced and competent mining attorney.'' Reliance upon the advice of reputable counsel is proper evidence of good faith. (*Swiss Oil Corp.* v. *Hupp*, 253 Ky. 552 [69 S.W.2d 1037, 1041-1042]; *Delta Drilling Co.* v. *Arnett*, 186 F.2d 481, 486; *Robinson* v. *Gordon Oil Co.*, 266 Mich. 65 [253 N.W. 218]; *Cooke* v. *Gulf Refining Co.*, 135 La. 609 [65 So. 758, 761]; *Mason* v. *United States*, 260 U.S. 545 [43 S.Ct. 200, 67 L.Ed. 396].) But the appellant contends that because the name of Mrs. Siemon appeared as one of the relocators he was not in a position to give an unbiased opinion relative to the mining law as applicable to the facts in the case, and she leans heavily on the analogy of

the effect of the advice of an attorney in a malicious prosecution action. To rebut the element of malice which a plaintiff must prove in support of his cause of action for malicious prosecution, a defendant may effectively show that he acted on the advice of an attorney; the law generally requires that such attorney be "disinterested" (54 C.J.S., Malicious Prosecution, § 53, pp. 1018-1019; 81 A.L.R. 518); this rule seems reasonable as applied to malicious prosecution, for if there is malice or a slanted view on the part of an attorney who gives such advice, it would merely reinforce the malice of a defendant in such an action. But in the area of mining law or with respect to commercial transactions generally, counsel for the appellant have not cited any authority supporting their thesis. It may be observed in passing that there are very few large corporations which are advised by attorneys who are not stockholders or under a retainer from the corporation. If the rule here applicable were as stringent as appellant claims, it would disqualify a very large part of the bar from the pursuit of its daily activities. Actually, the trial court may well weigh the question of interest on the part of an attorney in a situation such as this in determining whether he and his client are acting in good faith, but it would be wrong to disqualify a counselor as a matter of law merely because he had a technical or actual personal interest in the outcome.

In connection with the inquiry whether the advice of the attorney tended to make the cross-defendants' plea of "innocent trespass" sound, consideration should be given the concession made by appellant's counsel during the oral argument that Alfred Siemon was a reputable lawyer of long experience in mining matters, and the evidence produced on behalf of the Siemon family during the trial that the use of their names on the filings was merely a matter of convenience to their clients and that they afterwards quitclaimed their interest in the mining claims to other parties immediately upon demand; this latter fact would not, of course, excuse any failure on their part to comply with the law or permit them to plead innocence of any wrong which they might have done to the owners of the land by joining in the claims, but it would form a basis for a finding relative to the good faith of their clients in following their advice so that the trespass would not be characterized as fraudulent or wilful.

Another contention made by the appellant in connection with this question is that the opinion rendered by the

Fourth District Court of Appeal established as the law of the case that there was bad faith on the part of the cross-defendants. The suit was tried at large at the second trial and all issues were considered and determined. The Fourth District Court of Appeal only decided certain questions of law, and it reversed the case principally because the issue of estoppel was not fully dealt with. The doctrine of the law of the case is applicable, generally speaking, only to principles of law laid down by the court as related to a retrial of the facts, but the doctrine does not embrace the facts themselves. (*Moore* v. *Trott*, 162 Cal. 268, 273 [122 P. 462]; *Wallace* v. *Sisson*, 114 Cal. 42 [45 P. 100]; 3 Witkin, California Procedure, § 212, p. 2423 and § 214, p. 2426.)

The trial court was within its rights in making the finding that the trespass by cross-defendants was made in good faith.

With the trespass proven and the concession that 4,663 tons of gypsite owned by cross-complainant were taken, we must face squarely the question whether the judgment that no recovery be allowed on the cross-complaint can be upheld. Certainly, there is no question but that a judgment for at least nominal damages must be entered in favor of the cross-complainant. As is said in *Empire Gold Mining Co.* v. *Bonanza Gold Mining Co., supra,* 67 Cal. 406, 408-409: "We do not think the question of trespass or no trespass is to be determined on the basis of profit and loss.

"For every trespass upon real property the law presumes nominal damages. [Citation.]"

And it shocks the conscience of lawyer and layman alike to say that trespassers may convert 9,326,000 pounds of the product of a mine belonging to others and sell it for $8 a ton without being liable in substantial damages. Cross-complainant is entitled to recover. The only question is how much.

As is said in 33 California Jurisprudence 2d, Mines and Minerals, section 252, page 294: "The measure of damages in an action for trespass on a mining claim, in the absence of oppression, fraud, or malice, is the amount that will compensate for all the detriment proximately caused by the trespass. If the invasion of another's mine is the result of inadvertence or honest mistake, the measure of damages is the value of the mineral extracted, less the cost of mining and milling." (See *Lightner Mining Co.* v. *Lane, supra,* 161 Cal. 689, 704.)

Mining and milling is thus defined in *In re Rollins*

*Gold & Silver Mining Co.*, 102 F. 982, 985: "Mining and milling would seem to be, taken together, one industry, having for its object 'to obtain possession of material products in the state in which they were fashioned by nature.' Mining, the process of extracting from the earth the rough ore, would seem to be the first step in the process, milling or reducing the second step, to wit: the further separating of the materials found together, the one from the other, and extracting from the mass the particular natural product desired."

It will be the duty of the court upon retrial, therefore, first to find the reasonable market value of the gypsite converted by cross-defendants.

"The term 'value,' when applied to either personal or real property, without express qualification, denotes the price the property will command in the open market. And the term 'market value' refers to a price established therefor through the medium of a public sale of the property or its sale in the ordinary course of business." (14 Cal.Jur.2d, Damages, § 126, p. 752.)

The trial court should next ascertain the direct cost of mining and milling the gypsite in question in order that such cost may be deducted from the reasonable market value of the product. It should be noted that the costs of mining and milling should be restricted to the direct costs of those processes; and overhead costs of the partnership, advertising, executive salaries, lawyers' fees and all other items that do not fall strictly under the classification of "mining and milling" should not be deducted.

Furthermore, if the evidence shows that it was essential to transport the product to some point distant from the mine itself as the nearest market, it would be proper to deduct from the gross selling price or market value at such distant point the reasonable cost of transportation.

The award of damages may also include interest at the legal rate on the net reasonable market value of the converted gypsite as determined by the foregoing rules (Civ. Code, § 3336).

The Siemons contend that they ought not be held liable for damages because they claim that they did not participate in the actual trespass, the removal of the material from the mine, or a division of any of the proceeds from sales. They concede that if their notices of location had been good, they, together with the other six persons whose names appear on the notices, would have become coowners of the

mining claims; but they assert that coownership is not equivalent to partnership.

An action for trespass committed by one person does not make another person liable unless he participated by agreement or otherwise. (48 Cal.Jur.2d, Trespass, § 31, p. 31.) Cotenants of a mine—and that is what the eight people who signed the notices attempted to become—are not necessarily mining partners, for joint participation in the actual working of the mine is the essential element of such a partnership. (*Peterson* v. *Beggs,* 26 Cal.App. 760, 763-764 [148 P. 541].) And it does not follow as a matter of course merely because these eight people attempted to become cotenants of a mine that the Siemons are liable for the trespass of other cross-defendants in removing gypsite from the mine. A coowner of real property is not liable for the tort of his coowner, unless he actively participates in it directly or through an agent, or ratifies the tortious acts. (*Connor* v. *Grosso,* 41 Cal.2d 229, 230 [259 P.2d 435].) We do not find in the present record unambiguous evidence to establish that the Siemons participated in the trespass. Mr. Smith, one of the original plaintiffs, testified that the partnership, of which the Siemons were not members, consulted Mr. Alfred Siemon as their attorney relative to all phases of their activities and paid him attorney's fees therefor. An attorney acting strictly as such may give advice to a client in the absence of fraud or collusion without rendering himself liable to a third party for damages in a civil action. However, the relationship of these two attorneys to the tortious operations may be amplified and clarified upon retrial; and for that reason we do not affirm the judgment as to the Siemons; if the evidence on retrial shows that they acted strictly and solely as attorneys and gave legal advice only, without participation in the tortious acts and without sharing, or intending to share, in the proceeds, they cannot be held liable.

The judgment on the cross-complaint is reversed.

Stone, J., concurred.

The petitions for a rehearing were denied October 11, 1963, and the petitions of all parties for a hearing by the Supreme Court were denied November 13, 1963.