[Civ. No. 594. Fifth Dist. Nov. 10, 1966.]

KENNETH H. BATES, as Executor, etc., Cross-complainant and Respondent, v. V. R. SMITH et al., Cross-defendants and Appellants.

358

Milton Wichner for Cross-defendants and Appellants.

Di Giorgio, Davis & Narin, and Thomas R. Davis for Cross-complainant and Respondent.

McMURRAY, J. pro tem.*—This is the third time this action has reached an appellate court.

This appeal is from a judgment against appellants in the sum of $5,968.64. The first appeal was in *Smith* v. *Daly,* 181 Cal.App.2d 154 [5 Cal.Rptr. 176], which reversed a judgment quieting title in appellants. Thereafter, Meyer was substituted for appellants in another quiet title action, but appellants remained in the case as cross-defendants on the trespass action brought by Nellie Daly.

At the second trial title was quieted in Nellie E. Daly, individually and as executrix of the estate of her husband, Alvin Daly. However, no damages were awarded to her for the trespass because the court found that the trespass was in "good faith," and further found that the mining business carried on by appellants had resulted in no profit to them. On appeal this court upheld the finding that the trespass was not

---

*Assigned by the Chairman of the Judicial Council.

wilful, but reversed for a redetermination of the damage issue, indicating that at least nominal and perhaps substantial damages would be in order. (*Daly* v. *Smith,* 220 Cal.App.2d 592 [33 Cal.Rptr. 920].) In accordance with the holding in *Daly* v. *Smith,* trial was held in which Attorneys Alfred and Bennett Siemon were found to be without fault and not liable for any damages to respondent, and after reading the prior transcript and taking testimony, judgment was entered in favor of respondent in the sum of $5,968.64 damages.

The controversy centers around a strip mining operation conducted by appellants in the Cantil area of Kern County, which required four inches of overburden to be removed to uncover underlying gypsite, which was then disked and allowed to dry. Some of it was graded and screened before loading, but about 50 percent was loaded by skip loader directly into trucks and shipped to buyers in loads of 20 to 22 tons each. Some 4,663 tons were removed from respondent's property in this manner. The gypsite obtained was classified as 60 percent and better, the price increasing with higher gypsite content.

This court, in *Daly* v. *Smith, supra,* ordered the trial court to ascertain the value of the gypsite *in situ,* indicating that this could be done by ascertaining market value, less mining expenses and necessary transportation expenses. At the trial portions of the transcript of two prior trials were introduced and evidence was introduced showing the cost per ton of mining and milling and hauling the gypsite.

An accountant's summary of appellants' books, together with testimony by an expert witness named Mr. Fannin, support the trial court's findings that the gypsite's average sale price was $5.98 per ton, and that the average cost of milling, mining and transportation was $6.77 per ton. The evidence also supports the finding that the gypsite had a substantial value in place because of agricultural developments near Mojave and Cantil which would be equal to its price f.o.b. the mine, minus a reasonable cost of extraction in a normally operated mine disassociated from an upgraded sales campaign. The sales in that area revealed that $3.50 a ton was indicative of the true value of gypsite to the owners, which by subtracting $1.10 per ton for delivery cost and upgrading the value of the gypsite because of its percentage rating, showed the gypsite as worth $2.50 per ton at the mine.

Also supported are the determinations of the court that appellants' costs of milling and mining were unreasonably high. The trial judge interpreted the holding in *Daly* v.

*Smith, supra,* as allowing him to offset only the reasonable costs of extracting the ore. He, therefore, accepted Fannin's estimate of $1.00 per ton for milling and mining and determined that screening cost about 30 cents per ton; he added only 15 cents per ton to the expense figure since he found that only about one-half of the gypsite was screened, and also added seven cents per ton for road-building expense, and arrived at a reasonable cost of extraction of $1.22 per ton. Subtracting this figure from the $2.50 value figure, and multiplying it by the tons converted, he arrived at the damage figure for which judgment was given.

Although appellant urges vigorously that the court erred in allowing only the reasonable costs of mining and milling, and attempts to argue a different interpretation of the evidence than that adopted by the trial court, his argument must fail when the true intention of the earlier opinion in *Daly* v. *Smith,* 220 Cal.App.2d 592 at p. 603 [33 Cal.Rptr. 920], is considered: "It will be the duty of the court upon retrial, therefore, first to find the reasonable market value of the gypsite converted by cross-defendants.

" 'The term "value," when applied to either personal or real property, without express qualification, denotes the price the property will command in the open market. And the term "market value" refers to a price established therefor through the medium of a public sale of the property or its sale in the ordinary course of business.' (14 Cal.Jur.2d, Damages, § 126, p. 752.)

"The trial court should next ascertain the direct cost of mining and milling the gypsite in question in order that such cost may be deducted from the reasonable market value of the product. It should be noted that the costs of mining and milling should be restricted to the direct costs of those processes; and overhead costs of the partnership, advertising, executive salaries, lawyers' fees and all other items that do not fall strictly under the classification of 'mining and milling' should not be deducted.

"Furthermore, if the evidence shows that it was essential to transport the product to some point distant from the mine itself as the nearest market, it would be proper to deduct from the gross selling price or market value at such distant point the reasonable costs of transportation."

The appellants' argument is that since this court used the term "reasonable market value" and "reasonable cost of transportation," but did not use the word "reasonable" when

discussing the cost of milling and mining, the trial court was bound to accept the actual figures of expense incurred by appellants. To adopt this, the interpretation would be to allow an improvident innocent trespasser to completely destroy the value of an owner's property and escape any liability for so doing. It would put a premium on unskillful and reckless mining methods, which is certainly not a desirable result. The owner of the property, respondent here, certainly should be entitled to the value of the property converted. This value should not be diminished by a reckless and unskillful operation on the part of a trespasser, but should be in good conscience restricted only to reasonable costs which may be deducted by an innocent trespasser as distinguished from a wilful trespasser who is not given the benefit of such deduction.

█ The measure of damages in an action for trespass on a mining claim is the amount that will fully compensate the plaintiff for all the detriment proximately caused by the trespass. (*Empire Gold Mining Co.* v. *Bonanza Gold Mining Co.,* 67 Cal. 406 [7 P. 810].) █ The case of *Crofoot Lumber, Inc.* v. *Ford,* 191 Cal.App.2d 238 at p. 249 [12 Cal.Rptr. 639], states the proper rule: "[I]t seems reasonable to us that damage should be determined on the basis of market value, less the reasonable and necessary cost of marketing, . . ."

Appellants recognize the *Crofoot* case but try to distinguish it on the ground that there lumber was involved, while here mineral is involved. The distinction we think is not important. The important point is that in that case as in this the court was attempting to compensate an owner fully for the loss caused by a trespasser's wrongful invasion of his property. No rational reason appears why any different measure should be used here.

*Carey* v. *Glenco Citrus Products,* 235 Cal.App.2d 572, 581 [45 Cal.Rptr. 365], also sets forth the measure of damages where a conversion of an orange crop was involved as the amount which might have been received from the sale of the crop in due course of events, less the reasonable and necessary costs of production, harvesting and marketing from the time of conversion to sale, whichever was larger.

█ Appellants also attempt to argue that the trial court ignored the rule of the case in its method of trying the issue of damages. The argument is not pertinent since this court in the prior appeal was only concerned with whether profits were involved in determining damages, and to what extent expenses could be lumped under the category of mining and milling. It is settled that the law of the case does not relate to points

not considered. (See *Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634 [160 P.2d 804].)

The only other points raised by appellant resolve themselves into a quarrel with the evidence and with the court's interpretation of it. Under familiar appellate rules, this court cannot substitute its decision for that of the trier of the fact. A reading of the record convinces us that there is substantial evidence to support the present judgment.

Judgment affirmed.

Conley, P. J., and Stone, J., concurred.