[Civ. No. 2893. First Appellate District, Division Two.—August 18, 1919.]

## A. MICHALEK, Respondent, v. THE NEW ALMADEN COMPANY, INC. (a Corporation), Appellant.

[1] MINING PARTNERSHIP—INTEREST IN PROPERTY PREREQUISITE.—The ownership of an interest in a mine, or the right to the possession thereof, or an option to purchase the same, is a prerequisite for the existence of a mining partnership.

[2] ID.—AGREEMENT TO WORK MINE—CONSTRUCTION OF ORAL CONTRACT.—An oral agreement under which certain persons who have been working as miners upon certain property are given the privilege of opening up an abandoned tunnel on the property and "to take out the ore and deliver it to the company for one and a half years after the completion of the tunnel," for which the company owning the mine is to pay a given price per ton delivered at the mouth of the tunnel, the company to furnish the necessary tools, such miners to receive nothing in the way of wages and to furnish their own board, does not constitute a mining partnership between such miners, they not being bound to

---

1. Nature of, and what constitutes, mining partnership, notes, 83 Am. Dec. 104; 28 Am. St. Rep. 488; 4 Ann. Cas. 267; Ann. Cas. 1914D, 1191.

work any specified length of time, and there being no agreement that they are to acquire any interest in the mine or in the ore when it is taken out. Such contract constitutes a license and not a lease.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

David M. Burnett and John J. O'Toole for Appellant.

Arnold C. Lackenbach, R. Porter Ashe and Roland Becsey for Respondent.

HAVEN, J.—Plaintiff sued as the assignee of five individuals, who are alleged to have been the members of a mining partnership, for the recovery of the reasonable value of work and labor performed by said assignors under a license for the working of the mining property of defendant. The license was granted by oral agreement between defendant and seven persons, of whom one had died and three others had withdrawn from the partnership prior to the assignment to plaintiff, thus leaving but three of the original licensees who joined in the assignment. The other two assignors are alleged to have become members of the partnership after the acquirement by it of the license. The defendant pleaded a defect of parties plaintiff, both by demurrer and answer; and also pleaded in abatement of plaintiff's cause of action that if any partnership existed among the plaintiff's assignors, it was a general and not a mining partnership, which transacted its business under a designation not showing the names of the persons interested as partners, and that no certificate had ever been filed or published by such partnership, as required by sections 2466 to 2469 of the Civil Code. Defendant further contended that if the partnership was a general one, the entire partnership claim was not assigned to plaintiff. These defenses were valid unless a mining partnership existed. Plaintiff alleged such a partnership. Both parties assumed that it was essential to plaintiff's recovery to allege and prove the existence of a mining partnership, and the jury was so instructed. The

vital question involved in the appeal is whether or not a mining partnership existed among plaintiff's assignors by reason of the relations among themselves, or between them and the defendant. There is no conflict in the testimony as to the facts, which may be summarized as follows:

The defendant is the owner of a quicksilver mining property in Santa Clara County. The persons who are alleged to have formed the mining partnership had been working as miners upon this property. In December, 1915, one of such miners, who acted as the spokesman for his associates, approached the foreman of the mine and stated that he and some others of the miners had gone into an abandoned tunnel from another part of the mine and discovered a lot of quicksilver metal there, which they wanted to get out; that the only way to do so would be to open up that tunnel; and that he and six others desired to go into partnership and try to open it up. The foreman referred the miner to his superior officer, the general manager of the mine. At a subsequent interview between the manager, the foreman and the spokesman for the alleged partners, the foreman advised the manager of the desire of the miners to obtain the privilege referred to, and an oral arrangement was then entered into between the general manager and the miners whereby it was agreed that the miners should have the privilege of opening up the tunnel referred to, and "to take out the ore and deliver it to the company for one and a half years after the completion of the tunnel," for which the company was to pay them at the rate of six dollars per ton for each one per cent of quicksilver in the ore delivered by them to defendant at the mouth of the tunnel; that the defendant would furnish them with all the necessary mining tools and supplies for the purpose of opening the tunnel, but that they were to furnish their own board. The miners were to receive nothing in the way of wages, but were to do the work upon their own account. The property to be worked was the property of the defendant. There was no agreement that the miners were to acquire any interest in the mine nor in the ore when it was taken out; but they were to deliver it to the defendant and to receive compensation for their work at the rate above specified. They were not bound to work any specified length of time, but could stop whenever they found that they would not

get enough compensation out of the ore to satisfy them. There was no writing evidencing the contract. The record contains evidence to the effect that the licensees were referred to among themselves and by the employees of defendant as partners, and were generally recognized as such. This is no proof, however, of the existence of the peculiar character of partnership necessary for the successful maintenance of plaintiff's cause of action.

The court instructed the jury that their verdict must be for the defendant, unless they found the existence of a mining partnership, and that the work performed by plaintiff's assignors was so performed by them as a mining copartnership and not as individuals. In definition of a mining partnership and its attributes the court read to the jury sections 2511, 2512, and 2516 of the Civil Code. The jury found a verdict in favor of plaintiff, from which the defendant appeals, urging that the verdict is not supported by the evidence. Defendant's motion for a new trial was based, among other things, upon the same ground, and was denied by the trial court.

The facts above recited do not prove the existence of a mining partnership. [1] Under the sections of the Civil Code above referred to and the authorities in which the nature of such a partnership has been considered, the ownership of an interest in a mine, or the right to the possession thereof, or an option to purchase the same, is a prerequisite for the existence of such a partnership. Under section 2511 of the Civil Code "a mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same." Under this definition, the ownership or acquirement of a mining claim, or of at least an interest therein, and the actual engagement in working such a claim, are both essential before a mining partnership can be said to exist. A mining partnership exists by reason of the joint interest of the partners in a mining claim. [2] In the case at bar the alleged partners had no such interest when the alleged partnership was formed, nor did they subsequently acquire any. Their contract amounted to nothing more than the privilege of working upon a mine in which they neither

had nor were to acquire any interest. It was a contract of employment.

Respondent relies upon certain authorities which hold that the ownership of a mining claim in fee is not necessary for the existence of a mining partnership, and that such partnership "can be formed either to prospect for and locate mines, or to work mines belonging to other persons or to any or all of the individual members." (27 Cyc. 756.) An examination of the cases cited by the text-writers discloses that the mining partnerships there involved were decreed by reason of the existence in the partners of some interest in the property, or of a right of possession in their own right, as distinguished from that of the owner. The recent case of *Harper* v. *Sloan,* 177 Cal. 174, [169 Pac. 1043, 181 Pac. 775], is cited by respondent, and is an example of similar cases. In that case the plaintiff acquired, under his contract, the privilege of purchasing the property, and conveyed to his associates a portion of that right. Such a contract vests in the holder thereof an equitable or contingent interest in the property itself. In *Crowley* v. *Genesee Mining Co.,* 55 Cal. 273, the court construed a contract by which the plaintiff was employed to work in a mine belonging to defendant for the purpose of taking out what is known as "tribute rock," and delivering it at the defendant's quartz mine, to be crushed at its mill free of cost or expense to the plaintiff, and as compensation for his services one-half of the gross proceeds of each crushing was to be paid to the plaintiff. That contract was held to be a "contract of employment under section 1965 of the Civil Code." In *Hudepohl* v. *Liberty Hill Consolidated M. & W. Co.,* 80 Cal. 553, 558, [20 Pac. 339, 340], a written contract was executed by the superintendent of a mining company to plaintiff and an associate, which contract stated that the mining company leased to the plaintiff and his associate "the right and privilege to work and mine" certain mining property; that the company was to make improvements necessary for commencing and carrying on the work, and that the other parties were to work and mine the ground and receive one-half of all the gross products as compensation. In construing that contract the court said: "Such a contract does not create the relation of landlord and tenant, but fixes a rule of compensation for

services rendered. It is, in all its essential features, a contract for labor to be performed, and to be paid for by a share of the profits realized from such labor."

It was admitted upon the trial by the attorney for respondent that the contract here involved evidenced a license and not a lease. In *Wheeler* v. *West,* 71 Cal. 126, 128; [11 Pac. 871], an oral contract was involved, under which defendants were to enter and work a certain portion of the mine as they saw fit and to exercise their own discretion whether they worked it or not. That contract was held to convey to defendants a mere license and not a lease. In distinguishing the legal rights of a licensee from those of a tenant under a lease, the court used the following language: "There is a broad distinction between a lease of a mine, under which the lessee enters into possession and takes an estate in the property, and a license to work the same mine. In the latter case the licensee has no permanent interest, property, or estate in the land itself, but only in the proceeds, and in such proceeds, not as realty, but as personal property, and his possession, like that of an individual under a contract with the owner of land to cut timber or harvest a crop of potatoes thereon for a share of the proceeds, is the possession of the owner." (Quoted to the same effect in *Shaw* v. *Caldwell,* 16 Cal. App. 7, [115 Pac. 941].) *De Haro* v. *United States,* 5 Wall. (72 U. S.) 598, 627, [18 L. Ed. 681, see, also Rose's U. S. Notes], announces the same doctrine.

The verdict was not supported by the evidence in that no mining partnership was proved. Under the facts disclosed by the record, the doctrine of estoppel relied upon by respondent can have no application.

The judgment is reversed.

Langdon, P. J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 16, 1919.

All the Justices concurred, except Angellotti, C. J., who was absent.