CRYSTAL COPPER CO. v. GAIDO et al.

MONZETTI et al. v. CRYSTAL COPPER CO.

(Circuit Court of Appeals, Ninth Circuit. June 8, 1925. Rehearing Denied June 22, 1925.)

No. 4486.

1. **Partnership** ⊂⊃219(3)—**Less than all suing as partners for breach of contract with firm may not have judgment.**

Several judgment in favor of part only of plaintiffs, suing as partners for breach of defendant's contract with the firm, has no support in the pleadings; such a complaint stating a cause of action in favor of the partnership only.

2. **Mines and minerals** ⊂⊃97—**Interest in mine necessary for mining partnership of those working it not shown by evidence.**

Such an interest in a mine, under agreement with lessee, as will support claim of a mining partnership (as defined by Rev. Codes Mont. 1921, § 8050), existing between those actually engaged in working the mine, *held*, not established by the evidence.

3. **Corporations** ⊂⊃408—**No liability of corporation for breach of officer's individual agreement for sale of his own stock.**

There is no liability of a corporation for breach of the individual agreement of an officer thereof for sale of his own stock.

In Error to the District Court of the United States for the District of Montana; Charles N. Pray, Judge.

Action by Lawrence Monzetti and others against the Crystal Copper Company. Pete Gaido and another plaintiff had judgment on one cause of action, and on the other cause of action verdict was directed for defendant. Defendant brings error, and plaintiffs bring cross-error. Reversed and remanded.

Walker & Walker and C. S. Wagner, all of Butte, Mont., for plaintiff in error and cross-defendant in error.

H. A. Tyvand and F. E. McCracken, both of Butte, Mont., for defendants in error and cross-plaintiffs in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The complaint in this action averred that the plaintiffs, at all times therein mentioned, were mining copartners in mine subleasing from the defendant; that the defendant was the lessee of a certain mine in Silver Bow county, Mont.; that the defendant sublet to the plaintiffs a certain portion of the mine; that under the terms of the sublease the plaintiffs were to enter into and upon the property and do certain work; that the plaintiffs were to receive a certain royalty per ton, dependent on assays, on all ore shipped to the smelter from the mine, after deducting freight charges; that the plaintiffs entered upon the performance of the work and continued therein for a period of about six months; that the defendant wrongfully excluded certain of the plaintiffs from the mine, and canceled and rescinded the sublease without cause; that at the time of such cancellation and rescission there was about 1,000 tons of ore on the hanging wall side of the lead within the demised premises; that the plaintiffs would have realized a profit of $16.67 per ton upon all such ore, if the sublease had not been canceled and rescinded; and that by reason of the cancellation and rescission of the sublease the plaintiffs were damaged in the sum of $22,162.67.

As a second cause of action the plaintiffs averred that, some time after the making of the agreement set forth in the first cause of action, they agreed to purchase and the defendant agreed to sell 5,000 shares of the capital stock of the defendant corporation at an agreed price of 25 cents per share, to be paid for by deducting $25 from the net return of each of the plaintiffs on each and every carload of ore shipped from the mine and sold to the smelter; that the defendant arbitrarily refused to deliver 400 shares, which the plaintiffs had earned and paid for, and that by reason of the wrongful cancellation of the sublease the plaintiffs were unable to purchase the balance of the stock, amounting to 1,300 shares, upon which they would have realized a profit of $1.75 per share. It was then averred that by reason of the refusal of the defendant to deliver the 400 shares of stock, and the arbitrary rescission and cancellation of the sublease, and the arbitrary refusal of the defendant to permit the plaintiffs to go on with the sublease and complete their contract, the plaintiffs were damaged in the sum of $3,075.

The material allegations of the complaint were put in issue by answer. At the close of the testimony the court directed a verdict in favor of the defendant as to the second cause of action, and the jury returned a verdict in favor of two of the plaintiffs for the sum of $770.66 each. The verdict was silent as to the three remaining plaintiffs, and so was the judgment which followed. Each of the parties has sued out a writ of error; the plaintiffs because of the judgment against them on the second cause of action, and the defendant because of the judgment against it on the first cause of action. In view of the

cross-writs of error, the parties will be designated here as in the court below.

[1] The principal question discussed in the briefs of counsel and on the oral argument before this court is: Was there a sublease of the mine from the defendant to the plaintiffs, and were the plaintiffs mining partners, as that relation is defined by the Code of Montana? The plaintiffs earnestly maintain that there was a sublease of the mine, and that they were mining partners, yet in the face of this contention they are confronted by a verdict and judgment in favor of two of the five plaintiffs, and, even as to these two, the verdict and judgment are several. The action was brought to recover damages for breach of an agreement with the partnership, and the complaint stated a cause of action in favor of the partnership only. It stated no cause of action in favor of any one or more of the several plaintiffs, as individuals. The rule is well settled that one partner, or any number less than the whole, cannot maintain an action for breach of a partnership agreement. Vinal v. West Virginia Oil & Oil Land Co., 110 U. S. 215, 4 S. Ct. 4, 28 L. Ed. 124; Van Atta v. Montana Nat. Bank (C. C. A.) 275 F. 548. The reason for the rule is obvious. No partner has any fixed interest in the partnership property or contracts until after the partnership affairs have been settled and wound up, and therefore one partner cannot maintain an action in his own right to enforce partnership rights or obligations; and if an individual partner, or two of five partners, may not maintain an action for breach of a contract with the firm, it would seem to follow as a matter of course that one or two of the partners may not recover judgment for the breach. The several judgment in favor of two of the plaintiffs finds no support in the complaint or pleadings, and must therefore be reversed.

[2] In view of a retrial of the action, it becomes necessary to consider briefly the question of a mining partnership. "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same." Section 8050, Revised Codes of Montana 1921. "Under this definition, the ownership or acquirement of a mining claim, or of at least an interest therein, and the actual engagement in working such a claim, are both essential before a mining partnership exists by reason of the joint interest of the partners in a mining claim."

Michalek v. New Almaden Co., 42 Cal. App. 736, 184 P. 56.

What, if any, interest in the mine did the plaintiffs own or acquire by virtue of their agreement with the lessee? The nature of their claim may perhaps best be described by quoting at length from the testimony of one of the plaintiffs:

"The terms of the lease was to go down and sink the winze on the 500-foot level of the Goldsmith mine, northwest of the shaft, about 1,000 feet. The winze already extended down 35 feet south, and under the terms of. the lease the work that was to be done was to go down 15 feet more. We found some ore after we got down about 46 feet. We were to have any ore we discovered in the distance between 35 and 50 feet. Under that lease we were to get all the ore we could find, as far up as the 500-foot level, and as far east as the ore would go within the mining claim, and as far west as the claim would go. The royalties we were to pay on 25 to 30 rock was $11.30, and from 30 to 50 $23 royalty, and from 50 to 100 was $34.50, I think, and from 100 to 150 was $46, and from 150 to 200 was $56. The Crystal Copper Company was to furnish the equipment and the hoisting of rock and ore. We used to pump the water. The Crystal Copper Company furnished the pump. The company furnished the air for the drills. The company furnished the pump, and we used to do the work. We started on that lease on the 26th day of June, 1921. The first day we went there we went down and put in the pump and connected the pipe on it, and pumped the water. The men who went down to work were myself and Mr. Pagleero and Pete Gaido. The first work we did was pumping the water. After we had the water pumped out, we started to sink and clean up; started to pump, because the water was standing there for quite a while, and the ground was kind of loose and soft. We dug that winze as far as 75 feet. When we dug to the depth of 500 feet, we were not supposed to go any further, and we notified Mr. Alderson to see if we couldn't sink any more, and. he said to go ahead, and follow the ore, he said, as far as it goes, as far as went to, as far as the ore goes. We found ore above that, found the ore about 48 feet deep; that is, from the top of the winze down 48 feet we found ore. Mr. Alderson said to extend the ore down as far as went on the ore. The ore went down as far as 75 feet. The conditions of the extension of the lease when we had the 500-foot down, as far as we could go, was the same as before, the same terms and con-

ditions; that is, we were to have the ore from the depth where we reached up to the 500 foot level, up to the east end of the claim and to the west end of it, if it should go there."

The above testimony is as favorable to the contention made in behalf of the plaintiffs as any to be found in the record, and we have little hesitation in saying that it falls far short of establishing such an interest in the mine as will support the claim that a mining partnership existed between those actually engaged in working the mine. Wheeler v. West, 71 Cal. 126, 11 P. 871; Hudepohl v. Mining & Water Co., 80 Cal. 553, 22 P. 339; Michalek v. New Almaden Co., supra.

[3] Perhaps this conclusion renders unnecessary any discussion of the cross-writ of error, but we may say that it appeared from the testimony that the agreement for the sale of stock was the individual agreement of the officer of the corporation for the sale of his own stock, not the agreement of the corporation, and the direction of a verdict for the defendant on the second cause of action was therefore proper.

The judgment is reversed, and the cause remanded for further proceedings.