[Sac. No. 5055. In Bank.—February 24, 1937.]

WILLIAM T. TREAT et al., Respondents, v. JAMES A. MURDOCK et al., Appellants.

Andrew J. Copp, Jr., for Appellants.

Charles P. Snyder and George F. Snyder for Respondents.

EDMONDS, J.—The appellants in this case were held liable for the balance alleged to be due to the respondents upon an open book account. The judgment against them is based upon a finding that they were copartners with the defendant Murdock and others in a mining venture. Appellants contend that the evidence shows that at the times in question they were creditors of Murdock and that no partnership existed.

Prior to July, 1933, James A. Murdock had acquired some interest in what is known as the Rising Star placer mining claim in Calaveras County. He commenced to operate the mine in July, and continued these operations until the month of December in that year. During that period the respondents furnished groceries and supplies which were used at the mine and also advanced money to its superintendent. The account was kept in the name of Rising Star Mine or Rising Star Mining Company.

The appellants' connection with the enterprise commenced in July, 1933, when they loaned Murdock $2,300. They afterward made further loans, which reached a total of $4,550 in September. They then held the note of Murdock for $1500, but had no note for the balance and no security for any of the money which they had advanced. At that time, according to the testimony of the appellant Roger Moreno, he felt that the transaction should be on a more businesslike basis. To accomplish that he went to Calaveras County from his home in Los Angeles and told Murdock that he must give a note and some security for this amount. Thereupon Murdock gave Moreno his promissory note for $4,550 and a document dated September 30, 1933, which purported to assign to the Morenos "a proportional interest in and to that certain contract and agreement" which "provided for the sale and operation of . . . the Rising Star Placer Mining Claim". The assignment which Murdock gave to Moreno also recited that "this proportional interest shall be divided by a Board of Directors selected by the stockholders after the first meeting of a corporation to be formed".

Roger Moreno took this instrument to Los Angeles for approval. Later, when the assignment was examined by appellants' attorney in Los Angeles, he advised the Morenos in a conference at which Murdock was present that it was ineffective to convey any interest either as security or otherwise. Thereupon Murdock agreed that the note and agreement should be canceled and that he would execute a new note for the total amount which had been then advanced to that date (the appellants having given Murdock other amounts in the meantime), and a contract under which he would undertake to pay the note out of fourteen per cent of the net proceeds of the mine.

A written contract executed under date of October 27, 1933, was drawn to evidence this understanding. It recites that Murdock is the owner of an interest in the mine and also the owner of an option to purchase the remaining interests in it; that the Morenos have loaned $6,193 to him to be used in the development and operation of the mine; that Murdock agrees to execute his note for that sum and to pay the note "out of the net proceeds of the production of said mine, it being understood and agreed that fourteen per cent (14%) of the net proceeds of the production of said mine shall be

paid . . . beginning with the date of this contract and continuing until the amount of said note, together with accrued interest shall have been paid in full''. A further agreement of Murdock is that he will ''as soon as practical'' cause a corporation to be formed to acquire the mine and that ten per cent of the stock of such corporation shall be issued to the Morenos, or that he will continue to pay appellants the fourteen per cent of net proceeds.

It appears that Florence Moreno, the wife of Roger Moreno, George A. Michael and Vincent Moreno had some interest in the loans. Some or all of the notes and contracts which were made during the transactions with Murdock name them with the appellants. However, they were not made parties to the action and their interest, whatever it was, will be disregarded in considering the liability of the appellants.

The complaint alleged that the appellants and their codefendants were ''co-partners in the business of mining in the County of Calaveras'', and it was stipulated upon the trial of the case that unless such a partnership was established, respondents could not recover. The trial court found that appellants were members of ''a mining partnership actually engaged as co-partners in the business of mining the Rising Star Placer Claim'' and this finding is challenged by the appellants as having no evidentiary support.

Under section 2511 of the Civil Code, ''a mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same.'' The code also provides: ''An express agreement to become partners or to share the profits and losses of mining is not necessary to the formation or existence of a mining partnership. The relation arises from the ownership of shares or interest in the mine and working the same for the purpose of extracting the minerals therefrom.'' (Sec. 2512, Civ. Code.) Under these provisions the first requirement to constitute such a partnership is that the partners must have some ownership or interest in the mine. The respondents assert that the contracts of September 30, 1933, and October 27, 1933, gave appellants such an interest. But the evidence does not bear out these assertions.

In the first place, the contract of September 30th was never accepted. Appellant Roger Moreno testified in detail con-

cerning his trip to Calaveras County to see Murdock. He said, "I loaned him all this money, and I wanted some security for it. Mr. Murdock said 'I will go to the Security Trust and draw up some security and you can take it down to Los Angeles and show your brother and Mr. Michael and if agreeable with them—it is agreeable with me—we will sign.'" This testimony was corroborated by that of Charles Pohl, superintendent of the mine, who was present at the conversation related by Moreno. Pohl testified that Moreno "wanted to show it to his people in Los Angeles and to talk it over with his attorney before they signed it". This testimony was undisputed and coupled with the evidence concerning the negotiations which resulted in the contract of October 27th, it shows that the first assignment was never accepted by the appellants.

Nor does the contract of October 27th, which fixed the agreement of the parties, establish any partnership relation of Murdock with the appellants. It gave appellants no interest in the mine but only the right to require payment of the amount owing to them from a percentage of the net proceeds of the mine. It provides that they should receive stock in a corporation to be formed by Murdock when and if he secured some outstanding interests in the mine. But the entire tenor of the instrument shows that its purpose was to evidence an agreement that certain funds should be applied to payment of appellants' note, with interest, and that in addition they should receive either fourteen per cent of the net proceeds of the mine or ten per cent of the stock of the corporation to be formed as compensation for the use of the money. These provisions clearly show the transaction to have been a loan, and that the appellants never acquired or contracted to secure title to the mining property or any interest in it.

The code provisions concerning mining partnerships have been considered in numerous cases. It has uniformly been held that ownership of the mine, or an interest in it or an option to purchase it or the right to possession of it is a prerequisite for the existence of such a partnership. (*Michalek* v. *New Almaden Co., Inc.*, 42 Cal. App. 736 [184 Pac. 56]; *Stuart* v. *Adams*, 89 Cal. 367 [26 Pac. 970]; *Prince* v. *Lamb*, 128 Cal. 120 [60 Pac. 689].) There is also the further requirement that the partners actually engage in working

the mine. This does not mean that each of the partners must perform physical labor in the mine. But it does require that each of the partners have some part in carrying on the mining operations. "The partnership arises only when the co-owners unite and co-operate in working the mine." (*Petersen* v. *Beggs,* 26 Cal. App. 760 [148 Pac. 541].) Each of these elements of a mining partnership is entirely lacking in the record in the instant case. The appellants never acquired any interest whatever in the mining property and the uncontradicted evidence is that they never did any work on the property, they never directed any of the mining operations or had anything to do with the management of the mine.

On the contrary, the conduct and writings of the parties point unmistakably to the relationship of debtor and creditor. The fact that Murdock agreed to give appellants certain stock in a corporation if and when it was formed does not supply any of the requirements of a mining partnership. Nor does the agreement of Murdock to pay appellants' note out of a percentage of the net proceeds of the mine and to continue to pay them a share of those proceeds after the note was satisfied fix the relationship of partners. In the case of *Spier* v. *Lang,* 4 Cal. (2d) 711, 713, 716 [53 Pac. (2d) 138], the court said that "this feature of the agreement has long been held not to require a conclusion that a partnership relation existed where also there was no joint participation in the management and control of the business, and the proposed profit-sharing was contemplated only as compensation or interest for the use of the money advanced".

A somewhat similar situation was before the court in *Chung Kee* v. *Davidson,* 102 Cal. 188 [36 Pac. 519]. In that case the owners of a mine conveyed it to their creditors, retaining possession but agreeing to turn over to them "the entire result of each cleanup" as soon as made. The amount so received was to be applied by the creditors to the payment of the running expenses of the mine and the indebtedness owing to them. In discussing the relationship which was thus created the court said: "It is true that if any profit resulted from the mining operations conducted by the Cooks it was to be received and retained by the respondents, as they were to receive all the gold produced; but such profits were not to be received *as profits,* but to be applied as payment *pro tanto,* of the prior indebtedness of the Cooks to

them. No single feature of a partnership existed. Respondents were not co-owners, but encumbrancers of the mines and were not in possession, and were interested in the work done only as creditors, for advancements made and to be made, and if any profits resulted the Cooks received the whole benefit of its application to the payment of their pre-existing debt.''

The evidence does not support the finding that appellants in the instant case were engaged in a mining partnership. On the contrary, it conclusively shows that during the time covered by respondents' account they were also creditors of Murdock.

The judgment is reversed.

Curtis, J., Seawell, J., Thompson, J., Waste, C. J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.