[Civ. No. 11863.   First District, Div. Two.   Nov. 28, 1941.]

ELSIE NEFF, Appellant, v. THE MUTUAL LIFE IN-
SURANCE COMPANY OF NEW YORK (a Corpora-
tion) et al., Respondents; L. P. ANDERSON, Cross-
Defendant and Respondent.

Glensor & Schofield and Pierce J. Deasy for Appellant.

F. Eldred Boland, James W. Archer and Knight, Boland & Riordan for Respondents.

Robert E. Hatch for Cross-defendant and Respondent.

NOURSE, P. J.—Plaintiff sued to recover certain commissions claimed to have been earned by her assignor as a soliciting agent for the defendant company. By way of a cross-complaint the defendant made Anderson a party. The trial court found that plaintiff was not entitled to recover any of the commissions claimed, that the services were rendered by Anderson, another soliciting agent of the company, and that he alone was entitled to payment of the commissions.

There is no substantial dispute as to the material facts upon which the controversy rests. Plaintiff's assignor, one Max A. Arns, held a written contract, as assignee of one Abrams, with the insurance company under which the latter agreed to pay him as agent "during the life of this contract, the following scale of commissions on first year premiums secured and remitted by you, in cash, without assistance from other agents." Acting under the contract, in December, 1932, he solicited and secured from one Oliver eight policies of insurance amounting in all to $200,000, designated as "five year term insurance automatic continuance on ordinary life." In the year 1935 the insured indicated a desire to exercise the option of converting some of this term insurance into ordinary life but declined to deal with plaintiff's assignor as agent. By agreement between the company and Arns defendant Beckett, another agent of defendant company, was permitted to contact the insured and through his efforts $100,000 of this insurance was converted to the permanent or ordinary life plan, and the commissions for those services were paid by the company to Arns and Beckett by mutual agreement. Some time later Mr. Oliver indicated an intention of permitting the remaining term insurance to lapse. In that insurance the beneficiary was a corporation of which Oliver was president. The corporation notified the

defendant company of its desire to permit these policies to lapse. About this time a suggestion was made that Oliver either convert or renew the policies and designate members of his family or dependents as beneficiaries. But during all this time the insured steadfastly refused to have any dealings with plaintiff's assignor. Thereupon the defendant company directed Anderson to make contact with Oliver and in January, 1937, four policies of ordinary or whole life insurance, each in the amount of $25,000, were issued by the defendant company to Oliver, and the full commissions thereon were paid to Anderson.

Two basic issues were tendered to the court: first, whether under the terms of the written contract plaintiff's assignor was entitled to recover the conversion commissions on the four policies which were converted by Oliver through the efforts of another agent; and second, whether if plaintiff's assignor is not entitled to recover these commissions under the written contract he is nevertheless entitled to recover under the terms of an alleged oral agreement between Arns and the local manager of the defendant company made at the time Arns was appointed agent in 1933. These were the issues which were tendered to the trial court and they are the only substantial issues before this court on appeal from the judgment. ■■■ A determination of these issues calls for an interpretation of both contracts and the real controversy here is whether the trial court gave to each an interpretation within the meaning and intent of the parties. This is controlled by these settled principles—the question whether an ambiguity or an uncertainty exists in a contract is one of law upon which the finding of the trial court is not binding on appeal (*Brant* v. *California Dairies, Inc.*, 4 Cal. (2d) 128, 133 [48 Pac. (2d) 13]); but when the construction adopted by the trial court is reasonable and consistent with the intent of the parties the appellate court will not substitute its own construction. (*McKee* v. *Lynch*, 40 Cal. App. (2d) 216, 226 [104 Pac. (2d) 675]; *Estate of Bourn*, 25 Cal. App. (2d) 590, 600 [78 Pac. (2d) 193].) ■■■ Hence, if the oral evidence of custom and usage were all eliminated, we would still be impelled to hold that the only reasonable interpretation of the written contract was that adopted by the trial court. ■■■ Insofar as the oral contract is concerned the ambiguity is demonstrated by ap-

pellant's insistence upon his proposed interpretation. We are in full accord with the finding of the trial court that such interpretation would be wholly unreasonable and would not favor natural rights. ■ Hence, when a party urges such an interpretation of a contract the trial court may receive evidence to show the true meaning of the contract and when an interpretation is thereupon given which is reasonable and fair, the appellate court will not interfere.

■ Now the trial court made full and comprehensive findings disclosing that both the written and oral contract were in need of interpretation and then, on the basis of the evidence tendered, made findings as to what the parties meant and what they did not mean; the conditions under which the appellant would be entitled to be paid commissions; the conditions under which the commissions would be paid to another; the uniform custom and usage prevailing in the community relating to operations under such contracts; and the accepted meaning of the undertaking of the company to protect the agent. Thus it was expressly found that the word "protect" as used by the parties was not intended or understood to mean that an agent who originally sold policies such as those involved in this action would for all times thereafter and under all circumstances have an exclusive or vested right to the full commissions if the conversion was effected prior to the expiration of the period of the term insurance, and was not intended to cover commissions for the conversion of such insurance in cases where the insured refused to make use of the services of the original agent and the services of another and new agent would be required. The finding that the appellant's assignor was not entitled to recover commissions on premiums for the converted insurance under the terms of the written contract was fully supported by the uncontradicted evidence that this insurance was written and the premiums secured by other agents, and that no service was rendered by appellant's assignor for which he had not been fully compensated. ■ The finding involving the court's interpretation of the meaning of the oral contract to protect the business of the agent is fully supported by competent and substantial evidence. Appellant suggests that this evidence of the custom generally prevailing among insurance companies and agents in the community was improperly admitted because this oral contract was not ambiguous. The

argument is not persuasive. The interpretation placed upon the contract by the trial court is wholly reasonable and sensible; it is supported by the undisputed evidence of uniform custom and practice. The interpretation urged by appellant would be unreasonable and unfair. In the final analysis the appellant does not present any substantial legal question. The case is essentially a "fact" case calling for a reasonable interpretation of the contracts of the respective parties. This issue was fully heard and determined by the trial court, and the views of the learned trial judge were summarized in a memorandum opinion from which we quote with approval.

"There are two fundamental questions in this case. The first question is whether under the provisions of the Abrams contracts and under the circumstances shown to have occurred, plaintiff's assignor is entitled to recover the conversion commissions on the four Oliver policies in controversy that were 'converted' by Oliver in 1937. The second question is whether in the event that plaintiff as the assignee of Mr. Arns is not entitled to recover under the Abrams contracts she is entitled to recover under the agreement alleged to have been entered into by Arns at the time he was appointed agent for the defendant company in June, 1933.

"A careful review of the evidence has led me to the conclusion that under neither theory is plaintiff entitled to recover. The theory upon which Mr. Arns bases his first contention that he is entitled to judgment is that he originally brought about the issuance by the defendant company of the Oliver policies. He contends that under the language of the Abrams contracts with the defendant company under which contracts he, Arns, was acting when the policies were originally issued he became entitled to the conversion commission upon the conversion of the policies from term into life policies. . . . He claims that he is entitled to such commission even though the insured may have expressly refused to make use of his services in connection with the conversion, and even though another agent of the company may have effected the conversion as I find is the case. The theory of the defendant is that policies of the type here involved are always subject to conversion prior to the expiration of the term period by any agent of the company that issued the policies without the company being liable for the conversion com-

mission to another agent who may originally have written the policies.

"In my opinion the Abrams contracts are ambiguous on this point.

"Hence parol evidence of the custom obtaining in this vicinity with reference to allowing conversion commissions under similar contracts in the circumstances shown to have occurred was allowed by the court (see *Brett* v. *Vanomar Producers,* 45 Cal. App. 286, 289 [187 Pac. 758]).

"The evidence introduced on this point has convinced me that the construction contended for by the plaintiff cannot be sustained. My conclusion in this respect is fortified by my opinion that to follow plaintiff's contention to its logical conclusion must lead to an unreasonable result. Under that construction, even though the insured convinced the insurance company which had issued the policies involved that rather than permit the agent who had written the insurance to collect the conversion commission he would allow the policy to lapse, the company would still be helpless. That is to say it could not sanction the intervention of another agent through whom the conversion might be effected without subjecting itself to liability for the commission to both agents. Such a result impresses me as wholly unreasonable and one that the court should avoid if possible (see Code Civ. Proc., sec. 1866, and *Stein* v. *Archibald,* 151 Cal. 220 [90 Pac. 536]).

"The second theory advanced by plaintiff is in my opinion likewise unsound. It involves the agreement between Mr. Arns and the company whereby in consideration of Mr. Arns taking an agency contract he was to be 'protected' and paid the commission on the policies that had theretofore been written. So far as the evidence of the collateral agreement relied on is concerned, I am still of the opinion that it is admissible (see 22 Corpus Juris, page 125, Sec. 1665 and cases cited). None of the California cases cited by defendants in my opinion precisely covers the point here involved. However, in view of my ultimate conclusion on this point the question of the admissibility of the evidence becomes academic. The position taken by plaintiff is that at the time Mr. Arns was appointed agent for the defendant company it agreed that in consideration of his undertaking the agency it would protect him and pay him the disputed commissions, and also that it would not deal with any other agent with

reference thereto. But the evidence offered in support of this claim does not adequately support the position taken. Thus Mr. Arns testified that Mr. Murray and Mr. Hathaway on various occasions promised that if Arns would accept the appointment as agent for the defendant company it would 'protect' the business written by him, 'including the Oliver policies'; also that there would be no difficulty so far as 'twists' were concerned. In my opinion the evidence that was introduced by the respective parties does not permit such a construction as is contended for by plaintiff being placed on the 'protection' promised by the company. The evidence offered by the defendant on this subject took the form not only of proof of the meaning generally attributed to the term protection in the insurance world, but also of proof of the custom generally prevailing among insurance companies, as to protecting agents, and also of proof of the practice followed in numerous concrete cases involving the same type of policies and conversions under comparable circumstances in which the original agent was not paid the conversion commission. . . .

"It will be recalled that according to Mr. Arn's admission he could recall no communication, oral or written, that he had had with Oliver between the date that Beckett first appeared on the scene about April, 1935, and the date of the conversion of the policies here involved in January, 1937. I cannot conceive of an insurance company entering into a contract with an agent under which the company would tie its own hands so as to foreclose itself from making use of the services of another agent in converting policies of the type here involved after the agent who wrote the policies found himself unable to transact any business with the insured with reference to the policies. Such an agreement could have been made, but it would be in my opinion obviously an unreasonable one for the company to enter into. The evidence in this case has not satisfied me that the defendant company did make such an agreement. I am also unable to conceive of a custom growing up where an insurance company would carry the 'protection' of an agent to the extent of providing that he be paid a commission under the circumstances here involved."

For the reasons given the judgment is affirmed.

Spence, J., and Dooling, J. *pro tem.*, concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 27, 1942. Carter, J., did not participate therein.