[Civ. No. 7238. Third Dist. May 27, 1946.]

PHOEBE EDNA MAGUIRE et al., Plaintiffs and Appellants, v. CHARLES EDWARD LEES et al., Respondents; J. E. LANNAN, as Administrator, etc., Cross-defendant and Appellant.

H. Ward Sheldon, Nathan Newby and Newby, Holder & Newby for Appellants.

James Snell and Lynne Kelly for Respondents.

ADAMS, P. J.—This is an appeal from a judgment in favor of defendants (cross-complainants) in an action instituted by Bernard Maguire and Phoebe Edna Maguire, against Charles Edward Lees and his daughter, Antoinette Lees Howard, to quiet title to certain mining property in Nevada County. Defendants filed an answer and a cross-complaint bringing in as new parties defendant, Sidney R. Miller, Larry Lawson, and Harrison Cassell. In substance the answer and cross-complaint alleged that on March 16, 1942, the Maguires had entered into an agreement with Miller (hereinafter referred to as Exhibit A) to lease to him the mining property in controversy for a period of ten years, with option to purchase; that on April 14, 1942, Miller assigned and conveyed to Lees and Mrs. Howard a 60 per cent interest in said lease and his rights thereunder, which assignment (hereinafter referred to as Exhibit B) was subsequently, and on August 14, 1942, modified in certain respects by a writing (hereinafter re-

ferred to as Exhibit C); that after said assignment defendants performed all things required to be done under Exhibit A and engaged in mining operations on the property as mining partners with Miller and Lawson, all with the knowledge of cross-defendants, and expended large sums of money in the working of said mine; that on or about the 15th day of April, 1943, Miller, without the knowledge of defendants, pretended to surrender his lease of the premises to plaintiffs, but did not surrender possession of the property; that from and after April 30, 1943, cross-defendants prevented cross-complainants from entering upon the premises, contending that the latter had no interest therein. It was further alleged that cross-complainants were the owners of an undivided 60 per cent interest in the leasehold estate created by Exhibit A, and it was prayed for a decree to that effect and that cross-complainants' said rights be quieted as against cross-defendants.

Cassell, answering the cross-complaint, asserted that on April 9, 1943, the Maguires had executed a lease of the premises to him, and that he had been in exclusive possession thereof since said date and had prevented the cross-complainants from entering thereon. Annexed to his answer was a copy of a quitclaim deed executed by Miller on April 9, 1943, by the terms of which Miller purported to ''release, remise and quit-claim'' to the Maguires ''all his right, title and interest in and to'' the said mining claim, and ''all his right, title and interest in and to'' the agreement of lease of March 16, 1942. Said document was also executed by the Maguires, who agreed therein to accept the surrender, to waive the provisions of Exhibit A relating the payment of royalties accrued or to accrue, and to release Miller from all liability pursuant to section 16 of said lease.

Miller and Lawson answered the cross-complaint and among admissions contained in said answer admitted that cross-complainants had expended the sum of $7,500 during the development of the property. They, however, disclaimed any interest in the property.

The Maguires in answer to the cross-complaint admitted numerous allegations thereof, but denied that they knew that Lees and Howard and Lawson and Miller were copartners in the working of the mine, or that cross-complainants have or had, ''by virtue of the sixty per cent (60%) interest in and to the rights granted by Exhibit A or otherwise, the right to the possession of said lands and improvements and/or to con-

duct mining operations thereon.'' Also they denied that cross-complainants acquired any interest in the lands referred to, and denied that the leasehold interest created by the agreement with Miller remained in effect.

Upon the issues created by the pleadings the cause was heard by the court sitting without a jury, and at the conclusion findings were filed, the significant portions of which are as follows: That after the making of the agreement between the Maguires and Miller, the latter and Lawson, as copartners, took possession of the property; that by the agreement of April 14, 1942, Miller assigned and conveyed to Lees and Mrs. Howard a 60 per cent interest in the lease ''together with a like interest in and to all rights, interests and privileges, in said real property, then vested in'' Miller; that plaintiffs knew at all times that said instrument had been executed and knew the contents thereof, and that, ''with the knowledge and consent'' of plaintiffs, Lees and Mrs. Howard took possession ''in common with'' Miller and Lawson, as ''mining partners.'' The execution of the modification of August 14, 1942 (Exhibit C), was also found, and it was further found that plaintiffs knew on that date that it had been executed and knew the contents thereof. It was further found that the cross-complainants had fully performed all things required to be done under the lease, that they were the owners of an estate for years in said lands, and were entitled to possession thereof; that on April 9, 1943, plaintiffs and cross-defendants knew that cross-complainants had expended large sums of money in operating the said mine. Regarding the purported lease to Cassell it was found that at the time of its execution Cassell knew that cross-complainants claimed to be the owners of a 60 per cent interest in the lease and the right to possession of the premises, and took his lease with knowledge or notice of all facts set forth in the findings. Regarding section 16 of Exhibit A, which provided terms upon which the lease might be terminated by the lessors, it was found that no notice such as was therein provided for had ever been given by the lessors. As for the quitclaim deed of Miller it was found that same did not surrender, or purport to surrender, any rights of cross-complainants in the property. The amount expended by cross-complainants was found to be $7,500, expended in driving drifts, tunnels and adits, and constructing shops, cabins and other buildings, which expenditures had enhanced the value of the property $10,000; and it was concluded that at the time of

Miller's surrender said cross-complainants had a partnership lien under division 2, chapter 5, section 2354 of the Public Resources Code for the sum of $7,500, upon all of the property and assets of said mining partnership. The provisions of section 20 of Exhibit A, which provided the terms under which the lease might be assigned, were found to have been waived by the Maguires.

A judgment for cross-complainants followed, adjudging that they were the owners of an estate for years in the property and were entitled to possession thereof, and that, as against their said interests, neither plaintiffs nor Cassell's administrator Lannan—who had in the meantime been substituted after Cassell's death—had any right, title, estate or interest in the premises.

On this appeal appellants contend that by the assignments of April 14th and August 14th (Exhibits B and C), cross-complainants acquired no interest in the lease (Exhibit A); that Miller's purported surrender of the lease on April 9, 1943, terminated any rights Lees and Mrs. Howard had therein; and that the court's finding that plaintiffs had waived compliance with the provisions of paragraph 20 of Exhibit A, its finding of a partnership lien, and other findings referred to, are without support in the evidence.

The assignment of April 14th (Exhibit B) was in the form of a letter to Lees which was prepared by cross-defendant Miller himself, and signed by him and by Lees and Lawson. It reads as follows:

"Pursuant to our recent conversations and in confirmation of our mutual understandings concerning my proposal to you respecting the operation of the Mammoth Mine, on which I hold a working lease and option to purchase, I am pleased to set out here the details of our plan for commencing work and developing the property.

"As you know, I obtained the lease and option on March 16, 1942, from Phoebe Edna Maguire and Bernard Maguire, of Sierra County, California, where the mine is located, and as you will see from the lease, we have until July 1, 1942, to commence operations which must be continuous at the rate of one shift per day for the life of the lease, or until I should exercise the option to purchase the property.

"I will give you a copy of the lease before leaving for the mine—my partner, Larry Lawson and I believe we should start work as soon as possible as this is a fine time of year to work in that region.

"As we have agreed, $5,000.00 should be sufficient to conclude the development work necessary to bring the property into production and for that sum I will assign and *do now assign* to you and your associate, Mrs. Robert S. Howard, of Bel-Air, California, *sixty per cent (60%) interest of the lease and option*—Thirty percent (30%) to you and Thirty percent (30%) to Mrs Howard.

"In the event $5,000.00 is not sufficient to bring the property into production as discussed by us, it is understood and agreed that you will provide an additional $2500.00 working capital which shall be repaid to you from the proceeds of the earnings from Fifteen percent (15%) *of our Forty percent (40%) holdings of the lease and option,* the payment of which shall be made commencing with the first earnings and continued until the whole sum of $2500.00 is paid back.

"Your signature below will signify your approval of the above and will constitute a contract between us." (Italics added.)

Exhibit C provided:

"That the said parties of the first part, for and in consideration of the sum of Five Thousand Dollars, deposited by the parties of the said second part in the Bank of America on April 17, 1942, to the credit of the parties of the first part, and to be used in the development of the Mammoth Springs Mine Lease, the receipt of which is acknowledged by the parties of the first part, has granted and do grant unto the parties of the second part and their heirs and assigns, that participation in the above mentioned lease and in any water rights that may be acquired to exploit said lease, as provided for in our original contract, dated April 14, 1942 and which this indenture now supersedes.

"It is expressly agreed and understood that in case the above mentioned deposit fails to reach its objective, which is the ancient river channel passing through the Mammoth Springs Mine Lease, then the parties of the second part agree to furnish additional capital as required, to be used according to their instructions to reach the objective specified, and for which expenditures the parties of the first part agree to furnish good and sufficient vouchers.

"And in consideration of the foregoing clause for additional financing, it is agreed and understood by the parties of the first part, that in the event profits accrue to the Lease from the operation of the enterprise, 15% of such profits will be

made available to the parties of the second part until they have been reimbursed for their investment; the remaining profits to be prorated between the contracting parties according to their participation in the Lease.''

As hereinabove stated, the trial court found that the assignment of April 14th conveyed to Lees and Mrs. Howard a 60 per cent interest in Exhibit A, together with a like interest in and to all rights, interests and privileges in the real property then vested in Miller.

That it is the province of a trial court to resolve doubtful language in a contract and to determine the effect of a subsequent agreement ratifying it, and that an appellate court will not disturb the decision of the trial court where the instruments, considered in the light of the facts, are susceptible of the interpretation placed upon them, was held in *Tide Water Associated Oil Co.* v. *Curtin,* 41 Cal.App.2d 884, 895-896 [107 P.2d 945]. (Also, see, *Estate of Northcutt,* 16 Cal.2d 683, 690-691 [107 P.2d 607]; *O'Hare* v. *Peacock Dairies, Inc.,* 26 Cal.App.2d 345, 354 [79 P.2d 433]; *Estate of Boyd,* 24 Cal. App.2d 287, 290 [74 P.2d 1049]; *Neff* v. *Mutual Life Insurance Co.,* 48 Cal.App.2d 110, 112 [119 P.2d 404]; *McNeny* v. *Touchstone,* 7 Cal.2d 429, 435 [60 P.2d 986]; *Richards* v. *Pacific S. W. Discount Corp.,* 44 Cal.App.2d 551, 560 [112 P.2d 698].)

In arriving at its decision it was proper for the trial court to consider the conduct of the parties under the assignment, as it is a well established principle that the practical construction given to a contract by the parties, and their conduct under it, are persuasive in determining the construction to be put upon the instrument. (*Lemm* v. *Stillwater Land & Cattle Co.,* 217 Cal. 474, 481 [19 P.2d 785]; *Rosenberg* v. *Geo. A. Moore & Co.,* 194 Cal. 392, 403 [229 P. 34]; *Commercial Discount Co.* v. *Cowen,* 18 Cal.2d 610, 615 [116 P.2d 599]; *Burns* v. *Peters,* 5 Cal.2d 619, 623 [55 P.2d 1182]; *Katz* v. *People's Finance etc. Co.,* 101 Cal.App. 552, 558 [281 P. 1097].)

And the record before us shows not only the construction given by the trial court, but the construction put upon the instrument by Miller, Lawson and Lees, to wit, that it constituted a conveyance to Lees and Mrs. Howard of a 60 per cent interest in the leasehold interest which Miller had acquired by his lease from the Maguires, and that Lees and Mrs. Howard became mining partners with Miller and Lawson.

The interest of Miller in the lease was clearly assign-

able. (Civ. Code, § 1044; 6 C.J.S. 1054; Pub. Resources Code, § 2356; 3 Cal.Jur. 253; 36 Am.Jur. 318, 395-396.) The lease itself contemplated that it might be assigned, since it provided in section 20:

"It Is Expressly Understood and Agreed, that this lease and option may be assigned by the Lessee, provided, however, that prior to such assignment becoming effective such assignee or assignees shall have agreed in writing to be bound by and subject to every term and condition of this agreement and to perform every covenant and obligation herein specified to be kept and performed by the Lessee, and to assume and pay all demands, obligations, payments herein, and perform all the terms and conditions hereof, whatsoever the same may be, created by this agreement on the part of the Lessee herein, all to the same extent and effect as if the said assignee or assignees had been originally named in this agreement as the Lessee or Lessees." Also, section 22 provided that the agreement should inure to the benefit of the parties and their "assigns."

Appellants argue that the assignment, if it constituted such, did not become effective because Lees and Mrs. Howard did not agree in writing to be bound by the conditions of the lease. Except insofar as the execution of Exhibits B and C are concerned it does not appear that Lees and Mrs. Howard executed any writing agreeing to be so bound; but the trial court found that this requirement was waived by the lessors, and there is ample evidence to sustain an inference to that effect. A stipulation against nonassignment of a contract may be waived by the conduct of the parties. (3 Cal.Jur. 240.) It is conceded by all parties that Lees and Mrs. Howard advanced a total of $7,500 which was expended in pursuance of the terms of the lease, and it is not contended that the terms of same were not met except in minor details. The Maguires never objected to the assignment, and that they had knowledge that the assignees had an interest in the lease is apparent from the evidence as a whole. Bernard Maguire was living in a cabin at the mine; he was a witness to Exhibit C, and Mr. Lees testified that he had frequent conversations with Maguire about his rights in the property; that he told him he had a 60 per cent interest in the lease and was furnishing all of the money; and that in June, 1942, he had a conversation with Mrs. Maguire and Lawson in which the latter stated to Mrs. Maguire that Lees was one of the part-

ners in the mine and was putting up the money to do the work, and that Lees then told her he had a controlling interest. He also testified that he discussed the assignment of August 14th, Exhibit C, with Maguire who read it and said he would be happy to sign it—that they discussed it all of one day.

Furthermore, the condition of the lease regarding assignment did not necessarily apply to a partial assignment. (See *Spangler* v. *Spangler*, 11 Cal.App. 321, 323 [104 P. 995]; *Adelstein* v. *Greenberg*, 77 Cal.App. 548, 553 [247 P. 520].)

Also, the provisions of section 20 were not made the ground of any forfeiture of the interests of the lessees, nor was any termination of the lease ever declared under its terms, which expressly provided, in section 15, that the lease could be terminated by the lessors for any claimed default *only* upon the giving of notice with specifications, after which the default should have continued unabated for thirty days. It is not even contended that any such notice was ever given by the Maguires.

 If any doubt existed as to the effect of the instrument of April 14th as conveying a 60 per cent interest in the leasehold, same is dispelled by that of August 14th (Exhibit C), which recited that Miller and Lawson, in consideration of $5,000 deposited to their credit by Lees and Mrs. Howard, to be used in developing the Mammoth Spring Mine Lease, "has granted and do grant unto the parties of the second part . . . that participation in the above mentioned lease . . . as provided for in our original contract dated April 14, 1942. . . ." This instrument was signed by Miller and Lawson, and was witnessed by plaintiff Bernard Maguire; and Lawson testified that a copy of same was signed by Lees.

Appellants contend, however, that even conceding that Lees and Mrs. Howard acquired an interest in the leasehold by virtue of Exhibits B and C, they nevertheless did not become mining partners with Miller and Lawson. Sections 2351 and 2352 of the Public Resources Code provide that a mining partnership exists when two or more persons own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom and actually engage in working the claim; that an express agreement to become partners is not necessary, and that the relation arises from the ownership of shares or interests in the mine and working it for the purpose of extracting minerals therefrom.

 Appellants contend, however, that Lees and Mrs. How-

ard did not become *owners* of a mine within the meaning of those statutes, and that they do not apply. There is no merit in this contention. In *Harper* v. *Sloan,* 177 Cal. 174, the court said, at page 179 [169 P. 1043, 181 P. 775], that it is not necessary to the existence of a mining partnership that the property which is to be operated be owned in fee by the partners; and it was there held that an instrument made by Harper, a lessee of a mine, conveying to Sloan and another a two-thirds interest in a contract which had given him possession and a right to purchase, constituted the three mining partners. (Also, see, *Treat* v. *Murdock,* 8 Cal.2d 316, 320 [65 P.2d 881]; *Del Giorgio* v. *Powers,* 27 Cal.App.2d 668, 678 [81 P.2d 1006]; *Eriksson* v. *Wise,* 56 Cal.App.2d 574, 581 [132 P.2d 905]; 17 Cal.Jur. § 106, p. 440; 3 Lindley on Mines (3d ed.) § 798, p. 1963.)

The testimony shows that the mine was worked by the partners, Lees himself performing some labor. Furthermore, that Miller and Lawson recognized Lees and Mrs. Howard as their mining partners appears in numerous places in the evidence. In fact, Miller testified that he understood that he, Lawson and Lees were partners in the mining operations. Also appellants, in an appendix to their opening brief, set forth what purport to be a letter from Miller to Lees dated November 1, 1942, in which Lees is referred to as a ''partner,'' and a letter from Lees to Miller of November 3, 1942, in which Miller and Lawson are recognized as ''co-partners.''

Appellants' efforts to show that Lees and Mrs. Howard did not become mining partners with Miller and Lawson are obviously made for the purpose of supporting their contention that Miller's quitclaim and surrender of the original lease had the effect of canceling same and that ''all subsidiary rights of the cross-complainants (if any) were also cancelled in so far as plaintiffs are concerned.'' No such results followed. Even conceding the right of Miller to surrender to plaintiffs such right, title and interest as he had, he was powerless to convey the interest which had been acquired by Lees and Mrs. Howard, without their authority. Section 2359 of the Public Resources Code provides that no member of a mining partnership can, by a contract in writing, bind the partnership, except by express authority derived from the members thereof. Section 2360 lodges in the members owning a majority of the interests in a mining partnership the power to bind it in the conduct of its business; section 2355 provides that the mining

ground owned and worked by partners in mining is partnership property, and section 2356 provides that one of the partners in a mining partnership may convey his interest in the mine and business without dissolving the partnership, the purchaser, from the date of the purchase becoming a member thereof. The effect of Miller's quitclaim given without the knowledge or consent of Lees and Mrs. Howard was therefore to convey to the Maguires only such interest as he himself had at the date of the quitclaim, leaving the 60 per cent interest of Lees and Mrs. Howard unaffected.

Appellants tacitly admit this in that they attempted to show at the trial—and argue before this court—that Lees wrongfully ordered discontinuance of operations at the mine in October, 1942, and thereby not only effected a forfeiture of the interests of Mrs. Howard and himself and terminated the partnership, but effected also a forfeiture of Exhibit A. To show that a discontinuance of work at the mine was ordered by Lees, appellants rely upon a letter written by Lees to Miller on October 28, 1942. A portion only of this letter appears in the record before us, and though that portion indicates that Lees ordered a limitation of the operations that were to be carried on for the time being he did not entirely suspend them, and that resumption of operations was contemplated. Mr. Lees testified that he was influenced in this respect by the government order of October 8, 1942, suspending all nonessential gold mining operations, which he had been informed and believed was applicable to their operations. While there is some question as to whether this order did apply to same, the trial court found that Lees believed in good faith that it did, and that "so believing, and with the knowledge and consent of the said plaintiffs," defendants and Miller and Lawson ceased work and shut down the mine on November 6, 1942. It also found that such cessation was not intended to be permanent but only for the duration of the war or until further order of the War Production Board.

There is evidence that a letter was written to Miller by the Maguires agreeing to suspension of operations until the government allowed gold mining to continue; and at the trial Mrs. Maguire testified that on April 8, 1943, which was the day before the lease to Cassell was executed, she did not consider that Miller was in default on his lease, that on November 6 or 7, 1942, she and Mr. Maguire extended Miller's time to perform under the lease, and presumed from information gained

from the papers and radio that all nonessential mines would be shut down. Also, Miller testified that he secured from the Maguires a memorandum dated November 30, 1942, authorizing suspension of operations to protect him in the lease—that he wrote the memorandum and the Maguires signed it; and that he told the Maguires that they had done enough shifts pursuant to the requirements of Exhibit A, to last two years.

It may be said at this point, regarding appellants' contentions that the evidence is insufficient to support certain findings, that the record before us does not contain all of the evidence that was before the trial court. For instance, the deposition of Mrs. Howard by stipulation of the parties, was omitted therefrom. Also, while the record shows that a voluminous correspondence was carried on between the various parties after April 1, 1942, particularly between Miller, Lawson and Lees, and that at least fifty letters were introduced, appellants did not make such exhibits a part of their record on appeal, and only occasional excerpts from some of them were read into the record. Also proceedings in some action instituted by Mrs. Maguire, a map referred to as the Uren map, the deposition of Mrs. Maguire, the Maguires' lease to Cassell of April 9, 1943, and two sketches (apparently showing work done in the tunnel), though introduced in evidence, were omitted from the record before us, as was the memorandum which Miller secured from the Maguires authorizing suspension.

Under rule 5 of the Rules on Appeal, which rules became effective July 1, 1943, and were in effect when this appeal was taken in January, 1945, it was incumbent upon appellants to specify such exhibits as they desired included in the record; and appellants' notice in this case failed in this respect. In this state of the record we cannot say that the findings of fact which appellants claim are without support in the evidence are unsustained by the record that was before the trial court. If the findings need any additional support it will be presumed that the omitted evidence supports them. (*Hughes* v. *DeMund*, 7 Cal.2d 504, 506 [61 P.2d 455]; *Loewenberg* v. *Schneider*, 14 Cal.2d 305 [93 P.2d 1014]; *First National Bank* v. *Aldridge*, 33 Cal.App.2d 485, 487 [92 P.2d 674]; *Swaney* v. *Black*, 26 Cal.App.2d 314, 316 [79 P.2d 176]; *Fares* v. *Morrison*, 54 Cal.App.2d 773, 775 [129 P.2d 735]; *Klein* v. *Maddox*, 59 Cal.App.2d 141, 144 [138 P.2d 28]; 4 C.J.S. § 1172, pp. 1675-1677.)

It is also asserted by appellants that the moneys advanced by Lees and Mrs. Howard were wasted and did not enhance the value of the property, and that this was due to the blunders by Lees in directing the extension of the tunnel contrary to the views of Miller and Lawson, so that it did not reach the desired objective. But the findings of the trial court in this behalf find ample support in the testimony of Lees. The objective of the parties in extending the tunnel was the old river channel, which Miller himself admitted was reached. Whether it reached the center of the channel or only the rim of it was not demonstrated.

Appellants also urge that the interests assigned to Lees and Mrs. Howard were "securities" under the Corporate Securities Act (Stats. 1917, p. 673, as amended; 2 Deering's Gen. Laws, Act 3814, § 2), and, as such, not assignable without a permit from the Corporation Commissioner, which was not given. But the assignment in this case was not such security. (See *In re Lamb,* 61 Cal.App. 321 [215 P. 109]; *Austin* v. *Hallmark Oil Co.,* 21 Cal.2d 718, 727 [134 P.2d 777]; *People* v. *Steele,* 2 Cal.App.2d 370, 374 [36 P.2d 40].) At any event, appellants are in no position to urge this point. It is not made an issue in the pleadings, nor is our attention directed to any evidence on the point.

Appellants also urge that the trial court erred in failing to find what their rights are if Lees and Howard are owners of a 60 per cent interest in the lease. Again, this was not an issue in the case, and it does not appear that any finding on the subject was requested.

Regarding the lien of Lees and Mrs. Howard, appellants contend that Lees and Mrs. Howard could not claim such a lien "on the mining claim" and at the same time claim a 60 per cent interest in the lease. This contention finds answer in section 2354 of the Public Resources Code which provides that each member of a mining partnership has a lien on the partnership property for money advanced by him for its use; and the lien declared by the judgment was not on the "mining claim" but upon "the property and assets of the mining partnership formerly composed of" Miller, Lawson, Lees and Mrs. Howard, including the rights transferred by the lease (Exhibit A).

Appellants also advance some other contentions, including one that the motion for a new trial and a motion to vacate the judgment under section 663 of the Code of Civil Pro-

cedure were improperly denied. The grounds for those motions are the same that are urged as grounds for reversal, and for the reasons hereinabove stated were properly denied.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied June 21, 1946, and appellants' petition for a hearing by the Supreme Court was denied July 24, 1946.